**LEATHERS v. CRAIG et al. (No. 7992.)**

(Court of Civil Appeals of Texas, Galveston. Feb. 16, 1921.)

1. **Appeal and error** ⊜770(1)—**Where no brief for appellee, appellant's brief regarded as correct presentation of case.**

Where appellant alone filed a brief, the court of appeals would, under Rules 40 and 41 of that court (142 S. W. xiv), regard appellant's brief as a proper presentation of the case without examining the record.

2. **Eminent domain** ⊜13—**Exercised only for a "public use."**

The right of eminent domain under Vernon's Sayles' Ann. Civ. St. 1914, art. 6876, implies that the purpose for which it may be exercised must be a public one, and not a mere private one; a "public use" being one which concerns the whole community in which it exists, as contradistinguished from a particular individual or number of individuals.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Public Use.]

3. **Easements** ⊜16—**Private roads** ⊜2(1)—**No necessity for road; partition of tract carries with it right to use existing roads therein.**

Where the owner of a tract subdivided it between his children, and prior to the subdivision there were public roads bounding it giving convenient access to the church, school, gin, mill, and store used by the occupants, and private ways over the land intersecting the public roads, the parties living on any subdivision who would otherwise be cut off by other subdivisions had the right to demand access to and the use of the prior existing private roads over other subdivisions, under the rule that partition of real estate among heirs carries with it by implication the same right of way from one part to and over the other as had been plainly and obviously enjoyed by the common ancestor, and they could not sit by and permit themselves to be cut off by their kindred and then demand of the owner of an adjoining tract that he give them an outlet over his land, so that they had no legal right under Vernon's Sayles' Ann. Civ. St. 1914, art. 6876, to have opened such a new road over such adjoining tract; it not being a road of necessity.

4. **Private roads** ⊜2(1)—**Opening of unnecessary road may be enjoined.**

Where commissioners had no legal right to order a road opened across plaintiff's land under Vernon's Sayles' Ann. Civ. St. 1914, art. 6876, he had a right to enjoin their action as being without jurisdiction by suit in district court; the remedy by appeal to the county court under article 6882 being inadequate.

Appeal from District Court, Leon County; J. A. Platt, Judge.

Suit by J. F. Leathers against C. D. Craig and others. From judgment for defendants, plaintiff appeals. Reversed and remanded.

W. D. Lacey, of Normangee, B. D. Dashiell, of Jacksonville, and Gardner & Hopkins, of Palestine, for appellant.

LANE, J. N. B. Thomason was formerly the owner of about 3,000 acres of land, a part of the Del Valle eleven-league grant in Leon county, Tex. This land lies just north of about 700 acres of land owned by appellant, J. F. Leathers. There is a public road along its northern boundary line running practically east and west and intersects a public road leading to the Centerville and Alabama Crossing road, which lies south of the land of appellant Leathers, at the northwest corner of the Thomason land. This road connecting the Centerville and Alabama Crossing road with the road first mentioned runs along the west line of the Thomason land for a short distance. There is also a narrow lane open between the Thomason land and that of appellant, Leathers, which intersects the last-mentioned road. All these roads are so connected as to lead to Centerville, the county site of Leon county, and to the Raymond road, along which people living in that neighborhood get their mail. The church, mill, and schoolhouse attended and patronized by those living within the inclosed lands of Thomason and others are situated just north of the Thomason land and on the road running north thereof. Guy's store, the nearest trading point for those living in that neighborhood, and their gin, can be easily and conveniently reached by means of the above-mentioned road, and such roads have been so used for such purposes for many years. For many years persons living on the Thomason land have traveled private roads situated thereon running to and intersecting the roads lying to the north and west of said land. In

---

⊜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

fact, the church, schoolhouse, gin, mail route, and county site above mentioned, can be more easily and conveniently reached by traveling the roads mentioned than by the proposed road hereinafter mentioned.

In the year 1919, about one year before the institution of this suit, N. B. Thomason subdivided his 3,000-acre tract between his children. He deeded his son Lee a tract bounded on the north and west by the public roads above mentioned. He deeded to his son W. A., sometimes called Wallace, a tract bounded on the north by the road running just north of the Thomason land; and he deeded to his daughter, Mrs. Rodgers, and his son Nat, each a tract of land lying south and east of the lands deeded to Lee and Wallace. After said 3,000 acres had been so subdivided, Lee and Wallace fenced their lands, cutting those residing on the lands of Rodgers and Nat Thomason off from access to the roads lying north and west of said 3,000-acre tract, except by means of private roads through the lands of Lee and Wallace. The 700 acres of land owned by appellant, Leathers, lying south of the Thomason land, is bounded on the south by the Centerville and Alabama Crossing road, which runs by Guy's store and intersects the road lying to the north of the Thomason tract.

At the May term of the commissioners' court of Leon county for 1919, there was filed with and presented to said court the following petition:

"The petition of the undersigned citizens and residents of Leon county, Tex., respectfully represents unto your honorable court, that they reside in road precincts No. 16 and 17, in Leon county, Tex., known as the Centerville and Alabama Crossing road, in commissioners' precinct No. 1, Leon county, Tex.

"That the following named petitioners reside upon the Fernando Del Valle eleven-league grant, and is so bounded by the Trinity river and the lands of divers persons as to be completely surrounded and inclosed by said lands and fences, that they have no means of ingress and egress of going to and returning from their nearest trading point, mill, gin, schoolhouse, church house and county seat. Their nearest trading is at Guy's store on a first-class public road leading from Centerville, the county seat of Leon county, Tex., to Alabama Crossing on the Trinity river, and thence to the town of Crockett, the county seat of Houston county, Tex. And their nearest church and schoolhouse is on the north line of the Fernando Del Valle eleven-league survey. That the names of your petitioners living within said inclosure are as follows, to wit:

"Bob Henry, Thomas Wallace, John Logan, George Epps, Arthur Robinson, Hubbard Lewis, E. Downie (all parties signing by mark).

"And we the undersigned freeholders resident citizens of Leon county, Tex., residing in road precinct No. 16 and 17, in commissioners' precinct No. 1, Leon county, Tex., hereby join the petition of Bob Henry, Thomas Wallace, John Logan, George Epps, Arthur Robinson, Hubbard Lewis, E. Downie, and respectfully represent:

"That it will be to the interest and convenience of your petitioners to open a third-class road beginning at what is generally known as the Egypt Colored Church and schoolhouse on the north line of the F. Del Valle eleven-league survey;

"Thence N. 55 E. with said Del Valle eleven-league north line to the northwest corner of W. A. Thomason's 707-acre survey, the same being the N. E. corner of Lee Thomason's survey, both surveys being on the F. Del Valle eleven-league grant;

"Thence south 35 east with the dividing line between said W. A. Thomason's and Lee Thomason's surveys 700;

"Thence in a southeasterly direction across said W. A. Thomason's tract 1,750 varas to the N. W. corner of Mrs. J. W. Rogers' 425.5-acre survey, same being the S. W. corner of W. A. Thomason's 111-acre survey;

"Thence S. 30 east with west line of Mrs. J. W. Rogers' 425.5-acre survey and the west line of Mrs. Maggie Thomason's 484.6-acre survey 891 varas to a point on the north line of J. F. Leathers' survey, same being Mrs. Maggie Thomason's S. W. corner;

"Thence in a southerly direction across said J. F. Leathers' survey about 640 varas to the Centerville and Alabama Crossing road, 60 varas west to Willow slough.

"Wherefore your petitioners pray your honorable court to appoint a jury of view to lay out and mark said third-class road and for an order of your honorable court to open and establish said public road as herein prayed for.

Ed Henry. Drew X Parker. P. L. Lewis.
his / mark

L. C. Tubb. J. E. Tubb. W. R. Cash. Joe Tubb. Lem Manning. A. B. Tubb. L. B. Tubb. Dan Smith."

This petition was sworn to by the last signers, only three of whom were freeholders. All of the first signers were tenants living on the Thomason lands, and were then living in the same houses in which they had lived before the Thomason land was subdivided.

On the 14th day of July the commissioners' court, upon said petition, ordered the road opened as prayed for, and in its order made the following declaration:

"And it further appearing to the court that three freeholders qualified voters and citizens of said road precincts No. 16 and 17 reside within an enclosure containing more than 1,280 acres of land and that seven qualified voters reside within said inclosure through which the said road will pass or run, that it is necessary to open a third-class or neighborhood road through said inclosure so as to grant to the citizens residing within said inclosure ingress and egress to their nearest trading point, mills, gins, school and church houses and county seat."

A jury of view was appointed and proceeded to lay out the road as prayed for, and assessed appellant's damages at the sum of $300. The report of the jury of view was approved by the court. From this order or

judgment J. F. Leathers gave notice of appeal to the county court of Leon county, and he had the right of appeal to said court at the time this suit was brought and tried.

On the 15th day of March, 1920, appellant, Leathers, filed in the district court of Leon county his petition substantially alleging that the action of the commissioners' court in opening the road was void, and asking that the members of said court, and the road overseer, be enjoined temporarily from entering upon his premises and pulling down his fence and from in any manner opening said road through and across his inclosed land, and that upon final hearing such temporary injunction be made perpetual.

On the presentation of this petition to the district judge the temporary injunction prayed for was granted.

Upon trial and final hearing in the district court by the court without a jury, the temporary injunction theretofore granted was dissolved and the permanent injunction prayed for was denied. From this action of the court, J. F. Leathers has appealed.

Upon the request of appellant the trial court filed his findings of fact and conclusions of law, among which are the following:

### Facts.

"That said road was ordered opened by the commissioners' court of Leon county upon the petition of seven persons, who were tenants of J. W. Rogers and who resided within an inclosure containing more than 1,280 acres of land; that said petitioners had no means of ingress or egress going to and returning from their nearest trading point, mill, gin, schoolhouse, church house, and county seat; that a necessity existed for the opening of said road for the relief of said seven persons; and that the road ordered opened was the most practicable route that could be given the seven persons who petitioned for the right of ingress and egress from the inclosure within which they resided.

"(3) That eight of the eleven freeholders who signed the supplemental petition attached to the petition of the seven persons residing within the said inclosure were not freeholders within the precinct in which said road was located.

"(4) That plaintiff herein filed a claim for damages with the jury of view appointed to lay out said road and assess the damages and appeared by his attorney before the commissioners' court of Leon county, Tex. On the 8th day of March, A. D. 1920, and in open court did then and there give notice of appeal to the county court of Leon county, Tex., on the question of the amount of damages allowed to him by the said commissioners' court, and which said appeal is now pending in said county court."

### Conclusion of Law.

"1. The commissioners' court of Leon county, under article 6876 of Vernon's Civil Statutes of Texas, acted within its jurisdiction and had the legal right to order the said road opened and that said court acted within its authority in opening same.

"2. That all orders passed by the commissioners' court of Leon county in reference to the opening of the said road were in due and legal form and made and entered in conformity with law.

"3. That the commissioners' court of Leon county had jurisdiction and full authority to open said road in response to proper petition and to make and enter any and all orders necessary to be made in the opening of said road.

"4. That the district court is without jurisdiction to inquire into any of the matters in controversy in this suit other than jurisdictional matters, and to ascertain whether or not the commissioners' court abused the right of discretion vested in it in the opening of said public road.

"5. That plaintiff has an adequate remedy at law by prosecuting his appeal from the order of the commissioners' court of Leon county, opening said road, and assessing damages, to the county court of said county.

"6. That the commissioners' court of Leon county having jurisdiction of the entire subject-matters involved in this suit, and in the absence of satisfactory evidence that said commissioners' court abused its discretion in ordering said road opened, this court is without jurisdiction and plaintiff is not entitled to the restraining order prayed for in his petition."

[1] Appellant alone has filed a brief in this court. Therefore, governed by Rules 40 and 41 for the Courts of Civil Appeals (142 S. W. xiv), we must regard the brief of appellant as a proper presentation of the case without examining the record.

Appellant excepted to the second finding of fact and to the first, second, fifth, and sixth conclusions of law of the court, and on this appeal challenges their correctness.

The nine assignments taken together present practically but two questions, which are: First. Was the finding and conclusion of the trial court, that the seven petitioning persons, who resided within the inclosure mentioned, had no means of ingress and egress going to and from their nearest trading point, mill, gin, schoolhouse, church house, and county seat; that a necessity existed for the opening of said road for their relief; that the proposed road was the most practicable route that could be given such persons for ingress and egress to and from such inclosure; and that by virtue of article 6876, Vernon's Sayles' Civil Statutes, the commissioners' court had the legal right to cause the road in question to be opened across appellant's land, supported by the law or by the evidence?

Second. Is the conclusion of the court that the appellant had an adequate remedy at law by prosecuting his appeal to the county court from the order of the commissioners' court opening said road, and assessing damages, and that the district court is without jurisdiction to inquire into any of the mat-

ters presented by the plaintiff's petition in this suit, other than to ascertain whether or not the commissioners' court had jurisdiction of the matters disposed of by it, and whether or not the commissioners' court abused the right of discretion vested in it in opening said road across appellant's land, supported by either law or evidence?·

We think both of these questions should be answered in the negative.

The plaintiff, among other things, alleged:

"That the portion of said proposed road which will cross the said land of plaintiff is not necessary either to furnish a means of ingress or egress in or out of any inclosure, or to provide a road either for the public or the petitioners to their nearest trading points, mill, gin, schoolhouse, church or county seat, that the petitioners, who claim to live within an inclosure, have now two pass ways for ingress and egress to and from said inclosure, and that the proposed part of said road through and across plaintiff's land is not necessary to give either petitioners or the public a road to and from their nearest trading points, mill, gin, schoolhouse, ·church or county seat; that no public necessity exists for said portion of said proposed road and that the commissioners' court abused its authority and acted without warrant or authority in ordering said part of said road opened."

We think these allegations, as well as the fact that the road was ordered opened solely for the use of private parties who had a sufficient outlet from the inclosure in which they lived, were proven by the uncontradicted and undisputed evidence.

[2] There is no law· in this state which would authorize the taking of private property of one individual for the private use or convenience of another individual, or set of individuals, as is here attempted. That the lands of the citizen may be taken under the right·of eminent domain for public. highways is well settled; but the right of eminent domain implies that the purpose for which it may be exercised must be a public one and not a mere private one. A "public use" is one which concerns the whole community in which it exists, as contradistinguished from a particular individual or number of individuals.

[3] It seems not to be·allowable, therefore, to authorize private roads to be laid out across the land of unwilling parties by an exercise of the right of eminent domain. If by article 6876, Vernon's Sayles' Civil Statutes, by virtue of the provisions of which appellees contend the road in question can be opened across appellant's land, the Legislature intended to authorize the commissioners' court to take the property of one citizen for the use of private parties, even as a road, where no reasonable necessity exists therefor, then such law would be in violation of the Constitution of this state and could not stand.

In the case of Moseley v. Bradford, 190 S. W. 824, it is said:

"It is hardly necessary to say.that the power of the commissioners' court to lay out public roads did not exist except in cases of public necessity therefor, and that it did not have authority to lay out such roads for the sole purpose of benefiting Bradford only."

Again:

"The action of a municipal body in taking private property for the benefit of an individual only, under the guise of a benefit to the public, is held by the authorities to be a legal fraud upon the rights of the owner of the property taken, and upon that theory may be impeached and set aside, even though the officers who take it had no fraudulent intent in same. Kansas City v. Hyde, 196 Mo. 498, 96 S. W. 201, 78 L. R. A. (N. S.) 639, 113 Am. St. Rep. 766."

In Williams v. Kuykendall, 151 S. W. 629, it is held that—

"A way of necessity arises where one party has granted land to another not having any outlet save over the land of the grantor, in which the grantor, by implication, grants a right of way. Sassman v. Collins, 53 Tex. Civ. App. 71, 115 S. W. 337. In the case at bar the roadway in question is not one of necessity for the reason that .the evidence shows that there are two other roadways by which appellee can reach the same public road. It is true that said routes are shown to be more difficult, and one of them farther, than the one in dispute. In Hall v. City of Austin, 20 Tex. Civ. App. 59, 48 S. W. 55, and Alley v. Carleton, 29 Texas, 74, 94 Am. Dec. 260, it is held that a way of necessity must be more than a way of convenience, but must be an absolute necessity, without which the party claiming it would be wholly deprived of the use of his land."

In 10 R. C. L. § 28, the following rule is stated:

"The use which will justify the taking of private property under the exercise of the right of eminent domain is the use by or for the government, the general public, or. some portion of it as such, and not the use by or for particular individuals or for the benefit of particular estates."

It is advisable at this point to again call attention to the fact that the land, upon which those petitioning for the road in question as a road of necessity, was, prior to its subdivision, owned by N. B. Thomason and at that time there were public roads bounding it on the north and on the west which furnished convenient ways to the church, school, gin, mill, store, etc., heretofore mentioned, and that there were private roadways over said land which intersected said public roads. This being true, the parties owning or living on any subdivision, who would be cut off from ingress and egress to their lands or homes by the fencing of other subdivisions, would have the right to demand access to and the use of the private roads which existed prior to said subdivision, if

the same were necessary for them to reach their church, school, gin, mill, etc. And they cannot sit idly by and permit themselves to be unlawfully cut off from these places by their kindred and then demand of their neighbor that he give them an outlet over his land.

We think it well settled "that a partition of real estate among heirs carried with it by implication the same right of way from one part to and over the other as had been plainly and obviously enjoyed by the common ancestor, in so far as it is reasonably necessary for the enjoyment of each part." Ellis v. Bassett, 128 Ind. 118, 27 N. E. 344, 25 Am. St. Rep. 421. See, also, Howell v. Estes, 71 Tex. 690, 12 S. W. 62; Williams v. Kuykendall, 151 S. W. 629; Sellers v. Ry. Co., 81 Tex. 458, 17 S. W. 32, 13 L. R. A. 657.

It is unnecessary to pursue this discussion further, as it is apparent from what we have said that we have reached the conclusion that there was no evidence to sustain the finding of the trial court that those petitioning for the road across appellant's land had no means of ingress or egress going to and returning from their nearest trading point, mill, gin, schoolhouse, church house, etc., and that a necessity existed for opening the road across appellant's land for the relief of such persons.

It is also apparent therefrom that we have also reached the conclusion that, under the state of facts adduced, the commissioners' court had no legal right to order said road in question opened across appellant's land.

[4] We have also reached the conclusion that the conclusion of the trial court that appellant had an adequate remedy at law by presenting his appeal to the county court from the order of the commissioners' court opening said road, and assessing damages, and that the district court was without jurisdiction to inquire into any of the matters presented by appellant's petition filed in said district court other than to ascertain whether or not the commissioners' court had abused its right of discretion, was not supported by either law or evidence, and was therefore clearly wrong.

By article 6882, Vernon's Sayles' Civil Statutes, it is provided that in cases where public roads are laid out by the commissioners' court, and damages are assessed to the owners of the land taken for such roads, such owner may appeal to the county court from the order awarding damages, but that such appeal shall not prevent the opening of the road, but shall be only to fix the amount of damages. It is therefore clear that from the appeal of appellant to the county court he could not obtain the relief prayed for from the district court. Moseley v. Bradford, 190 S. W. 824, wherein it is said:

"It is also to be noted that by article 6882 of our statutes, the right of the owner to appeal from the decision of the commissioners' court in condemning his property for a public road is limited to a complaint that the damages allowed are not adequate, thus leaving the only remedy open to him for resisting the unauthorized taking of his property by the commissioners' court to a suit for injunctive relief in the district court, which was followed in the present suit."

In the same opinion it is also said:

"But the ground of objection that the court acted without lawful authority was not a mere irregularity in the proceeding, but went to the authority of the court to open the road at all."

It follows that from the conclusions above expressed we think the trial court erred in dissolving the temporary injunction and in refusing to make such injunction perpetual. This being our conclusion, the judgment of the trial court is reversed, and the permanent injunction prayed for by appellant is granted.

Reversed and rendered.