**CITY OF WICHITA FALLS, Texas, Appellant,**

v.

**M. Z. THOMPSON et al., Appellees.**

No. 16933.

Court of Civil Appeals of Texas.

Fort Worth.

Aug. 2, 1968.

Rehearing Denied Oct. 4, 1968.

Humphrey, Gibson & Darden, and Lee Humphrey, Wichita Falls, for appellant.

Vincent Stine, Henrietta, Richard H. Moore, Jr., Ernest May, Fort Worth, for appellees.

OPINION

LANGDON, Justice.

This is a condemnation proceeding initiated by the City of Wichita Falls (appellant) against M. Z. and Bob B. Thompson and their respective wives (appellees), owners of the land involved which is situated in an area where plans for construction of Lake Arrowhead for a municipal water supply for appellant City was commenced in 1960. About 155 acres of the Thompson lands involved are situated in the actual lake basin and about 46 acres above the lake level. All requisites for obtaining an award of commissioners and possession of the land involved were complied

with and objections to such award timely made by appellees.

Upon appeal and trial de novo in the County Court of Clay County, Texas, the jury found in answer to Special Issues 1–4, respectively, that the reasonable market value of the 201.64 acre tract was $160.00 per acre; that the 155.64 acres below the 930' contour line had the same value; that it was not the purpose of the City to condemn the land above 930' contour line for use as cabin sites for leasing to individuals and that the City acted with a clear abuse of discretion in determining that the land above 930' contour was necessary or convenient for purposes of the reservoir.

Judgment was rendered on the verdict awarding damages and cancelling the condemnation as to the 46 acres above the 930' contour.

The appellant's appeal is based upon ten points of error, the first eight of which are directed at Special Issue No. 4, contending there was no evidence, or insufficient evidence, to support its submission or the jury's answer thereto; that the inquiry was one of law and a general rather than an ultimate issue of fact, the finding as to such issue was meaningless in the light of the answer to Issue No. 3; the record does not raise an issue of fraud or abuse of discretion either directly or by inference; it was error for the court to refuse an explanatory instruction. Points 9 and 10 concern the admission, over the objection of appellants, of resolutions and minutes of the Board of Aldermen of the City and other documents, including a plat reflecting the intended use of certain areas around the lake.

We affirm.

The attack made in the trial court upon the right of the condemnor to condemn the property in question falls into two different classes. The first involved the assertion that the condemnor did not possess a legislative grant of the power of eminent domain to condemn for the purpose in question. The second asserted that although the purpose of the condemnation was one authorized by the Legislature, no necessity existed for condemning either the particular land or the amount of land in question. The second class of attack can be maintained only if the condemnee can show that the condemnor acted fraudulently or with a clear abuse of discretion in connection therewith. However, in the first class of attack, if it is shown that the purpose of the condemnation is one for which the condemnor does not have the power of eminent domain, then it is unnecessary to demonstrate fraud or a clear abuse of discretion on behalf of the condemnor because such fraud or clear abuse of discretion results as a matter of law from the attempt to condemn for the unauthorized purpose.

Brazos River C. & Reclamation Dist. v. Harmon, 178 S.W.2d 281 (Eastland Civ. App., 1944, error ref. w. o. m.), involved both classes of attack. The language in the opinion demonstrates the difference in the two attacks.

The Court set forth in part the contentions of the landowner as:

"The intervenor further alleged that in any event the District was seeking to condemn the excess acreage * * * for the purpose of conveying it to the State Park Board for park purposes, for which purpose the Park Board and the District had no such power of condemnation; * * *.

"The intervenor further alleged that the Board of Directors in determining to take said excess acreage acted arbitrarily and capriciously toward the defendant and intervenor in trying to take all of the acreage in question for the reason that more than 800 acres of this land was above the highwater level of the reservoir and not needed for the project; * * *."

The Court summarized the findings of the jury in response to the special issues as follows:

"The trial court submitted the above contentions by issues * * * and in response thereto the jury found: (1) 'that one of

the purposes for which the District is seeking to condemn the land (of landowner) * * * is for use as a park'; * * * (6) 'that the board of directors of the District acted with a clear abuse of discretion in determining that the taking of that part of tract number one * * * lying above the 1000 foot contour line was necessary or convenient for the purposes alleged in the District's cross-action. * * *"

■ The foregoing issues clearly demonstrate the different burdens of proof involved in the two classes of attack and that the necessity of showing fraud or clear abuse of discretion applies only to an attack upon the necessity of the taking of certain property or a certain amount thereof for an authorized purpose, and that such a burden is not imposed when the attack asserts the purpose for the taking is not one authorized by the Legislature.

In discussing the attack upon the necessity of the taking the Court stated:

"* * * In brief, the District contends there is no evidence in the record of the case that would authorize or justify the court in submitting an issue to the jury challenging the right of the District to condemn all the land sought to be condemned by it, * * *. Fundamentally it predicates such contention upon the proposition that the amount of land to be taken and the necessity therefor is within the sound discretion of the Board of Directors of the Reclamation District and that their acts in determining the amount of land to be taken and the necessity therefor is legislative (political) and not judicial.

"In general that is a sound proposition and the authorities relied upon by both appellant and appellee are in accord thereon. * * *

"However, the authorities also agree that such broad grant of power is limited to the amount of property reasonably necessary for the public use, and that such power may not be exercised where the governing body has clearly abused its discretion. * * *"

However, in discussing the attack on condemning for an unauthorized purpose, the Court stated:

"* * * Under *proper* pleadings, testimony and *issues* the jury has found that the District sought to condemn the alleged 'excess lands' for purposes not warranted by the statute, and in addition, has found that the effort to condemn the same amounted to an abuse of discretion by the authorities in charge of the proceedings. * * * (Emphasis added.)

"The District's right to take said land for a public park, camp sites and recreational purposes are all in the same category and it is unnecessary to discuss the questions at length. The same rules govern, and the authority to condemn for such purposes is neither expressly given nor necessarily implied in the law creating the District. From the viewpoint of such activities, the law must be strictly construed. * * *

"As held in Tod v. Massey, Tex.Civ.App., 30 S.W.2d 532, 534:

"'"There is no law in this state which would authorize the taking of private property of one individual for the private use or convenience of another individual, or a set of individuals, as is here attempted. That the lands of the citizen may be taken under the right of eminent domain for public highways is well settled; but the right of eminent domain implies that the purpose for which it may be exercised must be a public one and not a mere private one. * * *"'

"The Massey opinion further quotes with approval the following from Moseley v. Bradford, Tex.Civ.App., 190 S.W. 824:

"'"The action of a municipal body in taking private property for the benefit of an individual only, under the guise of a benefit to the public, is held by the authorities to be a legal fraud upon the rights of the owner of the property taken, and upon that theory may be impeached and set aside, even though the officers

who take it had no fraudulent intent in same. * * * " '

"In the views expressed, it is not to be implied that the Board of Directors or the individuals thereof were or are motivated by corrupt purposes or active fraudulent intent. Doubtless their purpose was to serve the best interests of the public, whereas the controlling question with the court is merely the legality of their acts when measured by the specific language of a statute, whose terms may not be transcended, although other benefits might seem to them desirable in connection with the enterprise. True, the power of eminent domain inheres in sovereignty and is limited by constitutional provisions only. Nevertheless, it is the law that neither the state nor its subdivision can exercise the power unless the law-making authority has conferred such rights by statutory enactments. Hence, the District is compelled to look to such source for the powers conferred upon it by legislative enactment. In the light of such authority, it would seem that the District would have no more right to condemn the alleged 'excess acreage' (if not necessary or convenient for the statutory public purpose) and subdivide same as lake front property, making long private leases thereof to selected individuals, than it would have to condemn other lands contiguous to those necessary for the public purpose and sell such contiguous lands to selected homesteaders.

"In arriving at the foregoing conclusions denying the District's right or authority to acquire additional and contiguous lands for private purposes, it must be borne in mind that *the case in hand is not one involving the right or authority of the District to sell or lease a part of its acreage theretofore acquired on the basis of 'necessity or convenience', or by any other legitimate method, but the instant case is one where the right to condemn is raised and challenged in the outset by the owner of the property and the jury has convicted the District of attempting to take the 'excess acreage' for the main or primary purpose of subletting to individuals for profit, etc. This last circumstance renders inapplicable those authorities upholding a condemnor's right to make certain uses or disposition of property already acquired in some authorized manner.*" (Emphasis added.)

In Kopilowitz v. City of El Paso, 415 S.W.2d 6 (Eastland Civ.App., 1967, ref. n. r. e.), the Court stated:

" * * * The evidence shows that the land acquired by the City from the appellants was acquired for and has always been used only for water and that it is, at least in part, in the recharge area. There is much further discussion of similar matters in the briefs, such as the mentioned trade by the City with El Paso Electric Company. *None of those things, in our opinion, constitutes evidence that the City acted arbitrarily or fraudulently, or that the land was acquired for any purpose other than to preserve and protect its water supply.*" (Emphasis added.)

To the same effect as Kopilowitz, supra, see Snellen v. Brazoria County, 224 S.W.2d 305 (Galveston Civ.App., 1949, ref. n. r. e.), in which it was stated:

"This is a proceeding under Art. 3264a, and the *question* of the *wisdom or propriety of condemning the property in question is an administrative or political one with which this court is not concerned. Our only inquiry must be whether the county has the right or power to condemn the property under aforesaid statute for a fire station.* * * *

" * * * *And if, as we believe, the county had the right of eminent domain to condemn property within Pearland upon which to place a fire station, its selection of the property to be condemned for that purpose is conclusive in the absence of fraud.* Housing Authority of City of Dallas v. Higginbotham, 135 Tex. 158, 143 S.W.2d 79, 88, 130 A.L.R. 1053. * * *

"The burden was upon the defendants, the owners of the property sought to be condemned in order to defeat the selection

of the property by the commissioners' court to allege and prove that in selecting the site for the fire station, the commissioners' court was guilty of a gross abuse of its discretion, or of fraud. West Production Co. v. Penn, Judge, Tex.Civ.App., 131 S.W. 2d 131, 132. If it can be said the defendants made the necessary allegations, we think the evidence fell far short of compelling the conclusion that in selecting the site, the commissioners' court either abused its discretion, or acted fraudulently." (Emphasis added.)

The preceding authorities demonstrate the distinction between the two classes of attacks upon a condemnor's right to condemn certain property for specific authorized purposes.

■ In the instant case both classes of attack were made by the landowner in the trial court. Special Issue Three submitted to the jury the attack of the landowner on the condemnation as being for a purpose not authorized by statute, i. e., cabin sites. It is quite possible in view of the evidence and the wording of the issue that the jury believed that the 46 acres was not solely for the purpose of acquiring cabin sites but for that and other purposes including roads, etc. The jury under this record could have believed that the cabin sites were not to be leased but that certain retired officials would be granted life estates in such sites. The jury could have believed under the evidence in this record that the appellant City was uncertain in its plans for use of the property. We find no conflict in the jury's answers to issues three (3) and four (4).

■ Moreover, the cases previously cited herein demonstrate that a fact issue for a jury does exist as to the question of whether fraud or gross abuse of discretion occurred in connection with determining the necessity for taking the particular land.

The question in the case thus becomes one of evidence in support of the jury's findings as to Issue Four. In this con-

nection, evidence pertaining to the necessity of condemning the particular property is properly admissible.

■ We have carefully examined the entire record in this cause and find ample evidence to support submission of the issue and the jury's answer thereto and that such finding is not so against the great weight and preponderance of the evidence as to be clearly unjust. Since there were no exceptions or objections taken to the court's charge (nor request for instructions) prior to its submission to the jury the points of error as to evidence are limited to questions of "no evidence" under Rule 272, Texas Rules of Civil Procedure. Scott v. Doggett, 226 S.W.2d 183 (Amarillo Civ.App., 1949, ref. n. r. e.), and authorities cited. We see no necessity in making a detailed statement of the evidence on affirmance. Rules 272, 273 and 274, T.R.C.P., likewise, control the points concerning instructions where none are requested.

The action of the City in condemning the land of the appellees in Clay County, at least in part for cabin sites (which action finds support in the record) was an abuse of discretion.

The taking of the 46 acre tract of the appellees was not incidental to nor connected with the declared purpose of constructing and developing a water supply and in controlling, maintaining and protecting same.

One witness testified that there was never any plan for use of the 46 acres for any public purpose before its dedication for lease as cabin sites. The taking of such property was in excess of that required for the stated public use and such excess was to be devoted to private use.

All points of error are overruled and the judgment of the trial court is in all things affirmed.

Affirmed.

RENFRO, J., not participating.