Esther SAUNDERS, Appellant,

v.

**TITUS COUNTY FRESH WATER SUPPLY DISTRICT NO. 1, Appellee.**

**No. 6–91–111–CV.**

Court of Appeals of Texas, Texarkana.

Feb. 9, 1993.

Rehearing Denied Feb. 9, 1993.

William H. McCoy, Daingerfield, Wayne Floyd, Mount Pleasant, for appellant.

Lutcher B. Simmons, Austin, Kerry Wootten, Russell, Russell, Wootten, Mt. Pleasant, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

GRANT, Justice.

Esther Saunders appeals from a judgment in which Titus County Fresh Water Supply District No. 1 was allowed to condemn a strip of her property for a roadway.

Saunders' main contention is that the trial court erred in upholding the condemnation because the Water District lacked the power of eminent domain necessary to condemn the property. Specifically, she contends that the trial court erred (1) in overruling her plea to the jurisdiction and (2) in denying her motion for a new trial.

Prior to 1980, the Water District obtained a portion of a tract of land belonging to J.S. Hackler as a part of securing land to create a reservoir. The filling of the reservoir, now known as Lake Bob Sandlin, covered the only access road which Hackler had to that part of his tract which was not taken by condemnation proceedings. The property is now bounded on the north by the lake and on the south by the Saunders property. Hackler sued the Water District for cutting off his access route to the remaining property, and, in an attempt to remedy Hackler's dilemma, the Water District sought to purchase a strip of Saunders' property. When Saunders refused to convey a right-of-way across her property, the Water District instituted eminent domain proceedings.

The trial court appointed a panel of special commissioners, who found in favor of the Water District and awarded Saunders $2,304 for her property. Saunders filed an objection and exception to this award with the district court. The case was tried before a jury, which found that the property had a value of $3,840. The trial court then entered judgment in which the Water District received a fee simple title to the strip of land, and Saunders received the amount found by the jury to be the value of the property taken from her.

Saunders' first argument regarding jurisdiction is that the failure of the Water District's governing board to expressly authorize the condemnation by reference to one of the purposes listed in TEX.WATER CODE ANN. § 54.212 (Vernon 1972) means that the board did not fulfill one of the steps necessary for the district court to obtain jurisdiction. In its resolution regarding the eminent domain proceeding at issue in this case, the governing board of the Water District found that the condemnation was necessary to settle the lawsuit filed by Hackler seeking to gain access to his property.

■ In *Maberry v. Pedernales Electric Cooperative, Inc.*, 493 S.W.2d 268 (Tex.Civ. App.–Austin 1973, writ ref'd n.r.e.), the court stated that a state actor in a condemnation proceeding must show strict compliance with the law that authorizes the taking. *Id.* at 270. In order to show jurisdiction, the court said that evidence must be

introduced demonstrating compliance with each of the several steps required. *Id.* One of these steps requires that the governing board of the condemnor make a determination as to whether the taking is necessary to serve the public. *Id.* at 271. The specific dictates of the *Maberry* decision, however, only require that the governing board shall have made a determination in order for the court to have jurisdiction. The question of whether the justification for the taking was proper is a substantive question and not one of jurisdiction. When the Water District performs each of the steps required by law, then the district court has jurisdiction to determine the substantive issues. The record indicates that the Water District has fulfilled the required steps.

■ Second, Saunders argues that the district court did not have jurisdiction because after the court overruled the first motion for summary judgment, the Water District filed a response to Saunders' objections to the commissioner's award in which it alleged that it had bought the Hackler property. Saunders contends that this alleged change in circumstances should have ended the jurisdiction of the district court in the matter and forced the Water District to institute new proceedings in order to condemn the property. She reaches this conclusion based on the fact that the resolution of the Water District's governing board states that the condemnation was undertaken because Hackler had filed suit against it, and when that suit was settled, the reason for the condemnation sought in this action vanished. She also points to the Water District's answers to her interrogatories in which the Water District admitted that the reason for the condemnation was to settle the suit.

Saunders contends that the district court could not have kept jurisdiction after the change in circumstances because in eminent domain proceedings the district court acts as an appellate court and therefore it can only review matters that were properly before the administrative tribunal, *citing, State v. Nelson,* 160 Tex. 515, 334 S.W.2d 788, 791 (1960), and *Stirman v. City of Tyler,* 443 S.W.2d 354 (Tex.Civ.App.–Tyler 1969, writ ref'd n.r.e.) (both involving county courts).

Neither of these cases is in point. In *Stirman,* initially the city had condemned only a right-of-way easement, and the appellate court held that at the time of trial the city could not then seek a fee simple instead of an easement. The *Nelson* case also involves whether additional property can be injected into the proceedings at the trial court level. These cases do not speak to the reason for the condemnation.

Since the special commissioners are only authorized to assess the damages to the owner of the property being condemned, the purpose of the condemnation does not affect their proceedings. The proceedings in the district court are trial de novo in nature, and the district court may determine all issues, including the authority to condemn the property.

■ In the present case, the trial judge ruled in the early part of the trial that he considered the condemnation action to be frozen in time and would not allow the Water District to show that it had changed its reason for condemning the property. In so ruling, the trial judge said, "If they're [the board members of the Water District] going to condemn for different purposes, then they need to go back through and try to go through a properly authorized condemnation proceeding." There was additional discussion of this ruling throughout the trial, and at one point counsel for Saunders sought to introduce the document concerning the changed purpose, but after much discussion, all exhibits that would reflect the new purpose for the condemnation were withdrawn. Thus, the case was not tried on the theory of the new purpose, and no point of error has been preserved on appeal concerning the trial court's ruling on the admissibility of this evidence. We, therefore, must proceed based solely on the evidence placed before the trial court involving the initial statement of the board's purpose for the condemnation.

This would not cause the trial court to lose jurisdiction to hear this case, and this point of error is overruled.

Saunders contends that the trial court erred in denying her motion for a new trial, because the Water District had no authority to condemn her property in order to provide a private individual with access to his property.

■ In Texas, governmental entities may condemn property only when the land is taken for a public use. TEX. CONST. art. I, § 17. *See also, Maher v. Lasater,* 163 Tex. 356, 354 S.W.2d 923 (1962) (Article I, § 17 "prohibits the taking of property for private use"); *Leathers v. Craig,* 228 S.W. 995 (Tex.Civ.App.–Galveston 1921, no writ) (defines public use as one concerning the community as a whole as opposed to an individual or group of individuals). The power of eminent domain claimed by any agency of the State must be conferred either expressly or by necessary implication by the Texas Legislature. *Coastal States Gas Producing Co. v. Pate,* 158 Tex. 171, 309 S.W.2d 828 (1958). Furthermore, the power of eminent domain is to be strictly construed in favor of the landowner and against the arm of the State. *Id.*

■ The main issue in this case is whether the Water District has the power to condemn Saunders' property, either expressly or by necessary implication from the statutes defining the district's eminent domain power. Whether a statute permits the taking of property for other than a public use in violation of the State Constitution presents a judicial question. *Atwood v. Willacy County Navigation Dist.,* 271 S.W.2d 137 (Tex.Civ.App.–San Antonio 1954), *appeal dism'd,* 350 U.S. 804, 76 S.Ct. 66, 100 L.Ed. 723 (1955).

The Texas Legislature granted the Water District the power of eminent domain in Section 54.212 of the Texas Water Code. That provision states that the district may condemn property "solely for sewer, water, storm drainage, and flood drainage connections when necessary." The Water District also claims a power of eminent domain as a water appropriator under TEX.WATER CODE ANN. § 11.035 (Vernon 1988), which states, "An appropriator may obtain rights-of-way over private land and may obtain the land necessary for pumping plants, intakes, headgates, and storage reservoirs by condemnation."

■ Saunders contends that the Water District went beyond its delegated powers in condemning the property in question and that the trial court therefore erred in denying Saunders' motion for a new trial. She cites *City of Wichita Falls v. Thompson,* 431 S.W.2d 909 (Tex.Civ.App.—Fort Worth 1968, writ ref'd n.r.e.), which states, "There is no law in this state which would authorize the taking of private property of one individual for the private use or convenience of another individual, or a set of individuals." *Id.* at 911.

The Water District contends that its use of the power of eminent domain in this case was proper. It says that the key element in the controlling statutes is that of necessity. The district cites *Luby v. City of Dallas,* 396 S.W.2d 192, 197 (Tex.Civ. App.—Dallas 1965, writ ref'd n.r.e.), for the proposition that a city may condemn whatever quantity of land its governing body in good faith believes is necessary for a given purpose, and the courts should not review the city's use of discretion unless it is found to have been in bad faith. What the court held in *Luby* was that, in absence of some constitutional or statutory limitation, the discretion of the condemnor is absolute as to what land it may condemn for its purposes, and the courts will not review its discretion in this respect except where the condemnor has acted in bad faith, arbitrarily, capriciously, or fraudulently in selecting the particular land for its purpose.

■ Once the condemnor demonstrates that its governing board has made an affirmative determination, the determination should not be disturbed by a reviewing court unless it is shown that the condemnor committed fraud or lacked authority from the State for the condemnation. *Maberry,* 493 S.W.2d 268. The taking of property for private use under the guise of public use may violate due process and may constitute legal fraud upon property owners, even though there is no fraudulent intent. *Whitfield v. Klein Independent School Dist.,* 463 S.W.2d 232 (Tex.Civ.

App.–Houston [14th Dist.], writ ref'd n.r.e.), *cert. denied* 404 U.S. 882, 92 S.Ct. 204, 30 L.Ed.2d 163 (1971). Our examination, however, does not concern a *fraudulent* taking but whether the condemnor lacked statutory and constitutional authority to take this strip of land.

The Water District contends that it had the authority to condemn the property for the roadway under the statute making it responsible for the relocation of highways when necessary due to Water District operations. Section 54.213 of the Texas Water Code states, in relevant part:

> In the event that the district, in the exercise of the power of eminent domain or power of relocation, or any other power, makes necessary the relocation, raising, rerouting ... or altering the construction of, any highway ... all necessary relocations ... shall be accomplished at the sole expense of the district.

TEX.WATER CODE ANN. § 54.213 (Vernon 1972).

In the case of *Bullock v. Greer*, 353 S.W.2d 929 (Tex.Civ.App.–Eastland 1962, writ ref'd n.r.e.), the court held that a water district, whose proposed dam required relocation and raising of the highway, had authority to condemn land for highway purposes. (The existing statute, TEX.REV. CIV.STAT.ANN. art. 8280–162, § 10, contained language similar to that of Section 54.213 of the Texas Water Code.)

The Water District urges that the intended use of the right-of-way across Saunders' property is a public one and that there is no evidence that the access road will not be traveled by the general public. The Water District takes the position that the possible use by the general public, combined with the fact the condemned strip of land will become the property of the State, constitutes a public use.

The evidence is undisputed that Hackler brought suit against the Water District because he had been denied an access road to his property by the actions of the Water District. The purpose of the condemnation was to provide an access road to Hackler.

We recognize that in some instances public use has been broadly construed. In *Atwood*, 271 S.W.2d 137, the court states that one of the tests of a public use within the meaning of the constitutional provision prohibiting the taking of private property for other than public use is whether the purposes for which the land is acquired are reasonably essential to the successful operation of the governmental entity.

We also recognize that there are a number of cases in Texas allowing condemnation for what appears to be private use. Some examples are (1) for the right-of-way for a pipeline running to one customer, *Tenngasco Gas Gathering Co. v. Fischer*, 653 S.W.2d 469 (Tex.App.–Corpus Christi 1983, writ ref'd n.r.e.); (2) for an electrical line to serve one customer, *Dyer v. Texas Electrical Service Co.*, 680 S.W.2d 883 (Tex.App.–El Paso 1984, writ ref'd n.r.e.); and (3) for a storm sewer, *Ratcliff v. City of Keller*, 698 S.W.2d 262 (Tex.App.–Fort Worth 1985, no writ). The courts in most of these cases justified finding a public use because such electrical lines and pipelines are available to all the members of the public who choose to connect to them.

The Texas Supreme Court has taken a different point of view toward the use of eminent domain to establish a private roadway. In the case of *Maher*, 354 S.W.2d 923, the Court declared unconstitutional a statute that would allow the county commissioners court to declare a private roadway to be a public highway. In the case of *Estate of Waggoner v. Gleghorn*, 378 S.W.2d 47 (Tex.1964), the Supreme Court declared unconstitutional the statute that granted a right of egress or ingress over another person's property to the extent that it authorized the taking of private property for private purposes.[1] This provision is applicable only when it was needed for owners who had no means of access to their lands. The Court held that it did not matter whether other people would use the

---

1. This ruling was not applicable to situations in which the surrounding property had been under common ownership.

road to get to the property either for social or commercial purposes. The Court held this statute violated TEX. CONST. art. I, § 17, which prohibits the taking of property for private use.

Some states follow the access theory in the law of eminent domain. Application of this theory usually occurs when condemnors are permitted to take substitute land to provide access to and from property landlocked as a result of the condemnation. *See* 2A Julius Sackman, *Nichols' The Law of Eminent Domain* § 7.12[4] (3d ed. 1987). This is what occurred in the present case, and in some states it is considered as an exception to the general rule that land may not be condemned for private purposes. This type of taking is based on economic grounds rather than public use and is justified on the grounds that it will save the public money because there will be no necessity for condemning the entire tract because there is no access. *See State, State High. Com'r v. Totowa Lumber & Supply Co.*, 96 N.J.Super. 115, 232 A.2d 655 (1967).[2]

On the other hand, many other states have held that statutes authorizing the condemnation for private roadways to be unconstitutional. *Sadler v. Langham*, 34 Ala. 311 (1859); *Stewart v. Hartman*, 46 Ind. 331 (1874); *Witham v. Osburne*, 4 Or. 318 (1873); *Varner v. Martin*, 21 W.Va. 534 (1873); and *Arnsperger v. Crawford*, 101 Md. 247, 61 A. 413 (1905).

Texas has recognized substitute condemnation. *See Bullock*, 353 S.W.2d 929. This is in a situation in which a third person's property is condemned for the relocation of a *public* road or other *public* project. *See* L.A. Bradshaw, Annotation, *Substitute Condemnation*, 20 A.L.R.3d 862 (1968). We have found no Texas case, however, authorizing the relocation of a *private* roadway or other *private* project.

We hold that the Water District did not have authority to condemn Saunders' strip of property to create a private road, and any implication to the contrary arising from the statute authorizing the Water

District's power of eminent domain would violate Article I, Section 17, of the Texas Constitution. This point of error is sustained.

We reverse the judgment and set aside the condemnation of the strip of land in question.

### ON MOTION FOR REHEARING

The Water District urges on rehearing that if the trial court erred in not allowing the presentation of evidence of the changed purpose of the Water District's use then this Court should remand the case for a new trial.

We did not consider whether the trial court erred or not in disallowing this evidence because neither side brought a point of error complaining about this ruling by the trial court. The trial court established by language quoted in the original opinion that the case below was to be tried on the basis for which the property was initially condemned. We reviewed the case on that basis because neither party complained on appeal about the case being so limited. Thus, the review of the trial was limited to the purpose for which the Water District initially condemned the property.

The motion for rehearing is overruled.

---

**2.** Texas has never recognized this doctrine. Texas does provide for compensation when access to the land is substantially impaired by

government activities. *Grapevine v. Grapevine Pool Rd. J. Venture*, 804 S.W.2d 675 (Tex.App.–Fort Worth 1991, no writ).