**FRANKLIN COUNTY WATER DISTRICT,
Appellant,**

v.

**J. G. MAJORS, et ux. Letha Majors,
Appellees.**

**No. 8037.**

Court of Civil Appeals of Texas,
Texarkana.

Jan. 25, 1972.

Woodrow Edwards, Mt. Vernon, for appellant.

M. D. Carlock, Winnsboro, Clyde Elliott, Jr., Elliott & Bass, Canton, for appellees.

RAY, Justice.

The opinion dated November 16, 1971, is withdrawn and the following substituted therefor.

The Franklin County Water District (appellant) sought to condemn some 272 acres of land in Franklin County owned by J. G. Majors and wife, Letha Majors (appellees). In the condemnation proceedings, appellant sought to take 220.9 acres of appellees' land below 390 feet mean sea level,

and the remainder of the land, 51.2 acres, above an elevation of 390 feet (as shown by the corrected judgment of the trial court). The crucial issue in the lawsuit concerned the right of appellant district to take the 51.2 acres; whether such taking was necessary for lake purposes; and whether appellant had abused its discretion in trying to take the 51.2 acres. The purpose in condemning the appellees' property was to build a reservoir to impound water to be sold to those in need and to provide recreational facilities. Trial was had to a jury. During the trial, appellees did not protest the taking up to the 390-foot level. The testimony reflected that the flood frequency between an elevation of 385 feet and 390 feet above mean sea level will only be once in one hundred years. Appellees took the position that appellant district had no need for any of appellees' land above the 390-foot elevation. The jury rendered a verdict in favor of appellees, and found that the condemnation of the 51.2 acres above the 390-foot contour line was for the purpose of allowing appellant district to lease the land for cabin sites and trailer camps. The jury also found that appellant district had abused its discretion in determining that the 51.2 acres was necessary for the purposes of the district. The trial court entered judgment allowing appellant to condemn appellees' land below an elevation of 390 feet MSL, but denied the district's right to condemn appellees' property (the 51.2 acres) above that elevation. No point is raised concerning the money award for any of the land.

Appellant district filed its amended motion for new trial setting up "no evidence" and "insufficient evidence," to support the findings of the jury, and the judgment based thereon. The trial court overruled appellant's motion. Appellant filed its appeal in this court, seeking a review of the trial court's judgment on six points of error.

The Franklin County Water District was created by Act of the 59th Legislature in 1965, Art. 8280-341, Vernon's Annotated Texas Statutes, and includes all of Franklin County. The district is empowered to exercise the following powers, privileges, and functions:

"(1) To control, store, preserve and distribute its waters and flood waters, the waters of its rivers and streams, for all useful purposes and to accomplish these ends by all practicable means including the construction, maintenance and operation of all appropriate improvements, plants, works and facilities, the acquisition of water rights and all other properties, lands, tenements, easements and all other rights necessary to the purpose of the organization of the District.

"(2) To process and store such waters and distribute same for municipal, domestic, irrigation and industrial purposes, subject to the requirements of Chapter 1, Title 128, Revised Civil Statutes of Texas, 1925, as amended.

"(3) To dispose of property or rights therein when the same are no longer needed for the purposes for which the District is created or to lease same for purposes which will not interfere with the use of the property of the District."

While there are other powers given to the district, they are not material to the disposition of this case, with the exception of a portion of Secs. 4(6) and 4(7), which are as follows:

". . . the right of eminent domain is hereby expressly conferred on said District and the procedure with reference to condemnation, the assessment of an estimating of damages, payment, appeal, the entering upon the property pending appeal and other procedures prescribed in Title 52 of the Revised Civil Statutes of Texas, 1925, as heretofore or hereafter amended, shall apply to said district."

Sec. 4(7) of Art. 8280-341, Vernon's Annotated Texas Statutes, provides:

"To do any and all other acts or things necessary or proper to carry into effect

the purpose for which the District is created and organized."

■ A water district, such as the one in this case, can only do that which is authorized by the statute creating it. A close examination of the statute creating the Franklin County Water District does not give it authority to acquire land in excess of that which will be used "to control, store, preserve and distribute its waters and flood waters, the waters of its rivers and streams, for all useful purposes and to accomplish these ends by all practicable means including the construction, maintenance, and operation of all appropriate improvements, plants, works and facilities, the acquisition of water rights and all other properties, lands, tenements, easements and all other rights necessary to the purpose of the organization of the district."

In City of Wichita Falls v. Thompson, 431 S.W.2d 909 (Tex.Civ.App., Fort Worth 1968, writ ref'd, n. r. e.), the Fort Worth Court of Civil Appeals had before it the identical questions presented to this Court. There the court said, "The attack made in the trial court upon the right of the condemnor to condem the property in question falls into two different classes. The first involves the assertion that the condemnor did not possess a legislative grant of the power of eminent domain to condemn for the purpose in question (cabin sites). The second asserted that although the purpose of the condemnation was one authorized by the Legislature, no necessity existed for condemning either the particular land or the amount of land in question. The second class of attack can be maintained only if the condemnee can show that the condemnor acted fraudulently or with a clear abuse of discretion in connection therewith. However, in the first class of attack, if it is shown that the purpose of the condemnation is one for which the condemnor does not have the power of eminent domain, then it is unnecessary to demonstrate fraud or clear abuse of discretion on behalf of the condemnor because such fraud or clear abuse of discretion results as a matter of law from the attempt to condemn for the unauthorized purpose."

In the case before us, the jury found that it was the purpose of appellant district to condemn the 51.2 acres above the 390-foot contour line for use as cabin sites and trailer camps for leasing to individuals, and further found that appellant district "acted with a clear abuse of discretion in determining that the 51.2 acres above the 390-foot contour line was necessary or convenient for purposes of the district."

Water districts under Art. 6081r have authority "to acquire lands for public recreational purposes, to construct thereon facilities for public use, to provide for the operation, maintenance and supervision of such public recreation areas, and to enter into agreements with other local, state or Federal Agencies for planning, construction, maintenance and operation of such facilities, together with necessary access roads thereto, and to maintain adequate sanitary standards on the land and water areas as a part of and adjacent to such recreation areas."

■ It is presumed that when a district has condemnation power, it can proceed to condemn such lands as it decides it needs for its purposes as long as that purpose is authorized by statute. The landowner may rebut that presumption by showing that more land is being taken than necessary, or that the land is being condemned for some purpose other than that authorized by statute. When the landowner has contested by probative evidence the district's right to take a piece of land on the basis that it has no constitutional or statutory authority to take the land or that the district is taking more land than is necessary for its purposes, then the burden of going forward with the evidence shifts to the condemnor-district. In the instant case, the landowner-appellee undertook to show that the reason appellant district wanted his land was for use as cabin sites and trailer parks and that the district had failed to designate any portion of his land to be used as a roadway,

park or recreation area. The burden of going forward with the evidence thus shifted to appellant district to show that it was going to use the 51.2 acres for one or more purposes authorized by Art. 8280–341 and/or Art. 6081r. Appellant district was unable to show what part of the 51.2 acres it was going to use for a road or park or recreational area or pollution control. The testimony in the case confirmed that some property had already been taken by the district and leased back to the former owner at $30.00 per acre per year. The testimony further shows that the Board intended to lease out some of the lands for commercial marinas, camp sites and other purposes to private individuals. Further, appellees were able to show that the known sales of water from the lake would be insufficient to pay off the bonded indebtedness of the district for building the lake and the cost of its maintenance and operation. There is ample evidence in the case for the jury to believe that the district was trying to acquire adequate land above the 390-foot MSL to lease in an effort to establish an income sufficient to pay off the bonded indebtedness and the maintenance and operation of the lake. Appellant states in its brief, "It is readily seen the taxpayers, State and County, need to make some money out of the approximately 850 acres of land surrounding the lake above the 390-foot flood level. Otherwise, there is no income to maintain and operate the lake with unless the Board of Directors can get some money from this adjoining land to pay for personnel, maintenance, and operation of the lake as well as provide for control, for recreational areas, and roads around the lake." It is unfortunate that the district finds itself in this financial position, but it is not the obligation or duty of the landowners adjoining the lake to alone provide the revenue for the construction, maintenance and operation of the lake built by appellant. That duty falls on all of the landowners and taxpayers within the district and not on the few who have land adjacent to the lake.

■ After a close examination of the record in this case, we have concluded that appellant water district failed to go forward with its burden of proof in establishing for what specific purpose appellees' land was being taken, and failed to show that the land was being taken for an authorized purpose.

In appellant's brief it is stated, "Appellant submits that any fair reading of the statement of facts absolutely convinces that the land use around the lake has not been planned as yet." The record further reflects that appellees' land was being condemned for a purpose which had not been established by appellant district with such specificity as to come within one of the authorized statutory purposes for condemnation. In order to condemn appellees' land, it was necessary for appellant to specifically point out the purpose, designate the portion of the land to be condemned for the specific purpose, and to show that such condemnation was one authorized by statute. This the appellant district did not do. As a matter of fact, the district had not determined what it would use appellees' land for, once it was condemned, but it only knew that it needed land for revenue purposes, as well as roads and parks. However, appellees' land had not been designated for a road or a park, or any other authorized purpose.

■ When a condemnor attempts to condemn land and has not established the specific purpose for which the tract of land is being condemned, such is an abuse of discretion as a matter of law.

In Brazos River Conservation and Reclamation District v. Harmon, 178 S.W.2d 281 (Tex.Civ.App. Eastland 1944, error ref'd, w. o. m.) the court stated: " . . . Under proper pleadings, testimony and issues the jury has found that the district sought to condemn the alleged 'excess lands' for purposes not warranted by the statute, and in addition, has found that the effort to condemn the same amounted to an abuse

of discretion by the authorities in charge of the proceedings." It is our conclusion that the same has happened in this case, and that the jury had ample evidence presented to it to sustain the verdict. Tod v. Massey, 30 S.W.2d 532 (Tex.Civ.App., Galveston 1930, no writ).

The judgment of the trial court is affirmed.

DAVIS, Justice (dissenting).

I dissent. I have had very little time to study the Transcript, Statement of Facts, Briefs and the Motion for Rehearing. But, I have decided it is necessary that this case be reversed and remanded to the Trial Court for a new trial.

I believe that Appellant has a right to condemn the 51.2 acres of land which it seeks to condemn for roads, park purposes, and other uses that are prescribed by the Statutes as cited in the original opinion. If the Appellees' pleadings and proof do not come within those meanings of the Statutes they will have to amend their pleadings and get their proof in order.

If the judgment of the Trial Court is affirmed, and Appellees want to continue their effort to condemn this land they will have to file an original Application for Condemnation, have Commissioners appointed, have a hearing thereon, and either side can take an appeal. Then the case will have to be tried over in the District Court.

It seems that an error was committed by the Appellees in failing to plead and to prove a legislative use of the 51.2 acres sought to be condemned. This, the Appellees must do. To reverse this case on this ground will not be reversing it "in the interest of justice." It will be reversing it so that proper pleadings may be made and proper evidence may be offered in support thereof. United States Fire Insurance Company v. Carter, 473 S.W.2d 2, Supreme Court of Texas, 1971.

I would reverse the judgment of the Trial Court and remand the case for a new trial.