

# THE ATTORNEY GENERAL
## OF TEXAS

August 13, 1987

JIM MATTOX
ATTORNEY GENERAL

Honorable B. F. Hicks            Opinion No.  JM-768
Franklin County Attorney
P. O. Box 787                    Re:  Whether a water  district  may
Mt. Vernon, Texas   75457        contract with a commissioners court
                                 to place an ambulance and emergency
                                 medical facilities at a lake owned
                                 and operated by the water district

Dear Mr. Hicks:

You ask two questions which we set out following:

> 1.  Can the Franklin County Water District, a
> conservation and reclamation district created by
> act of the Texas Legislature as authorized under
> Article XVI, Section 59, of the Texas Constitution
> and also governed by the general law concerning
> water control and improvement districts, lawfully
> make  a  donation  of  money  from  the  general
> operating fund of the Franklin County Water
> District to the Commissioners Court of Franklin
> County, said money to be used for the purchase of
> an ambulance to be owned by Franklin County
> Hospital, said hospital being owned by Franklin
> County, Texas?

> 2.  Can the Franklin County Water District, the
> Commissioners Court of Franklin County, and the
> Franklin County Hospital enter into an agreement
> pursuant  to  the  Interlocal  Cooperation  Act
> (Article 4413(32c), V.T.C.S.) pursuant to which
> Franklin County Water District will pay a sum of
> money  to  the  Commissioners  Court  of  Franklin
> County in exchange for which Franklin County
> Hospital would agree to place an ambulance and
> emergency medical technicians at Lake Cypress
> Springs, which is owned and operated by Franklin
> County Water District in Franklin County, during
> specified days of the year?

The  Franklin  County  Water  District  is  a  water  control  and

improvement district created by the legislature pursuant to article XVI, section 59, of the Texas Constitution. Acts 1965, 59th Leg., ch. 719. at 1668. See also Acts 1971, 62d Leg., ch. 354, at 1330. The water district is a political subdivision of the state. Acts 1965, supra. The district derives its powers at large from the constitution and specifically from the statutes governing the particular duties it is to discharge. Franklin County Water District v. Majors, 476 S.W.2d 371, 373 (Tex. Civ. App. - Texarkana 1973, writ ref'd n.r.e.); see generally Attorney General Opinions JM-258 (1984); M-171 (1967).

The district may exercise either those powers which are expressly delegated to it or those that are clearly implied from the express powers. Tri-City Fresh Water Supply District No. 2 of Harris County v. Manor, 142 S.W.2d 945, 946 (Tex. 1940); Lower Nueces River Water Supply District v. Cartwright, 274 S.W.2d 199, 207 (Tex. Civ. App. - San Antonio 1954 writ ref'd n.r.e.). Implied powers are those that are "indispensable to the accomplishment of the purpose" for which the political subdivision was created; powers "merely convenient" or "useful" cannot be implied and may not be assumed by the subdivision. Tri-City Freshwater Supply District No. 2 of Harris County, supra, at 947. (Emphasis added).

The act creating the district authorizes it to exercise the following powers, privileges, and functions, among others:

> (1) To control, store, preserve and distribute its waters and flood waters, the waters of its rivers and streams, for all useful purposes and to accomplish these ends by all practicable means including the construction, maintenance and operation of all appropriate improvements, plants, works and facilities, the acquisition of water rights and all other properties, lands, tenements, easements and all other rights necessary to the purpose of the organization of the District.

> (2) To process and store such waters and distribute same for municipal, domestic, irrigation and industrial purposes, subject to the requirements of Chapter 1, Title 128, Revised Civil Statutes of Texas, 1925, as amended.

> (3) To dispose of property or rights therein when the same are no longer needed for the purposes for which the District is created or to lease same for purposes which will not interfere with the use of the property of the District.

> (4) To cooperate with and contract with the

State of Texas, the United States of America, or with any of their departments or agencies now existing, or which may hereafter be created, to carry out any of the powers or to further any of the purposes of the District and, for such purposes, to receive grants, loans or advancements therefrom.

. . . .

(6) To exercise all functions to permit the accomplishment of its purposes including the acquisition within or without said District of land, easements, and rights-of-way and any other character of property incident to, or necessary in carrying out the purposes and work of the District by way of gift, device, purchase, leasehold or condemnation. . . .

(7) To do any and all other acts or things necessary or proper to carry into effect the purpose for which the District is created as organized.

Acts 1965, 59th Leg., ch. 719, §4 at 1671-72.

Chapter 51 of the Water Code governs the operation of the day-to-day affairs of the district. See Water Code §§51.121-51.194. A district may purchase machinery needed in the operation and maintenance of its improvements. Id. at §51.126.

Finally, the district may undertake activities in support of public recreation on its properties. Specifically, it may

(1) acquire land for public recreation;

(2) construct facilities for public use on land acquired for public recreation;

(3) provide for the operation, maintenance, and supervision of the public recreation areas;

(4) execute agreements with other local, state, or federal agencies for planning, construction, maintenance, and operation of public recreation facilities and necessary access roads; and

(5) maintain adequate sanitary standards on

the land and water areas that are part of or adjacent to public recreation areas.  (Emphasis added).

Parks and Wild. Code §13.304.

You first ask whether the district may provide money from its general fund to the Franklin County Commissioners Court for the purchase of an ambulance for the Franklin County Hospital, which is owned by Franklin County.  You do not say how the ambulance will be used, or whether it will be for the exclusive use of the district, either to protect the health and safety of the district's employees, or the well-being of members of the public using the district's property for recreation.  We assume that your question contemplates that the district will provide the entire cost of the ambulance.

The district may provide for the health care needs of its employees.  Attorney General Opinion O-4140 (1941).  Likewise, it may provide for the operation, maintenance, and supervision of public recreation areas.  Parks and Wild. Code §13.304(3).  Given these powers, the purchase and operation of an ambulance by the district would be a proper exercise of its authority.  An ambulance can perhaps be considered as a tool for providing first aid.  Unlike a fixed health care facility, such as a hospital or clinic, it cannot be used for long-term care, or, indeed, for anything other than dealing with critical or life-threatening emergencies, such as those that might be caused by construction or recreation accidents on the property of the district.

We conclude that the transfer of district funds to the county for the purchase of an ambulance to be owned by the county's hospital and placed on the district property is permissible, so long as the ambulance purchased with the transferred money is used exclusively for a purpose lawful both to the district and the county.  Article III, section 52, of the Texas Constitution prohibits the use of public money other than for public purposes.  This section of the constitution bars a political subdivision from gratuitously granting its funds to another political subdivision.  Harris County Flood Control District v. Mann, 140 S.W.2d 1098 (Tex. 1940); San Antonio Independent School District v. Board of Trustees of San Antonio Electric and Gas System, 204 S.W.2d 22 (Tex. Civ. App. - El Paso 1947, writ ref'd n.r.e.); Attorney General Opinions JM-220 (1984); JM-65 (1983); H-1170 (1978).  This provision would not prohibit the arrangement you have described to us, so long as it is carried out pursuant to an agreement that clearly indicates what public purpose is being served by the arrangement and that the district and the county each will derive a specific public benefit from the arrangement.  The agreement must assure that the ambulance is under the joint control of both parties, and that it will only be used for a purpose lawful to the district.

See Attorney General Opinions JM-220 (1984); JM-65, JM-44 (1983); MW-60 (1979) (county may make its funds available to city for operation of the zoo) and H-413 (1974) (court authorized to contribute to construction of swimming pool operated by school district).

If the ambulance is not devoted to the exclusive service of health care of water district employees, health care of persons using the district's facilities, or both, then we do not believe that the district is authorized to provide funds to the county for its purchase. In other words, if the ambulance is not at the complete beck and call of the district for either the protection of its employees, or the health and safety of members of the public using the recreation areas maintained by the district, then the district would have no authority to purchase the ambulance, and it would likewise have no authority to provide money to the county to purchase one to be used for that purpose. Because the district has no authority to operate an ambulance service to protect the public at large, it may not make its funds available for that purpose, even if the grant is to another public body. Thus, if the district provides all of the funds necessary for the purchase of the ambulance, the vehicle must be available for just the needs of the district. A contribution of some part of the cost of the ambulance would permit a proportionate dedication of the machine to the exclusive needs of the district.

We caution, however, that any examination of the lawfulness of the activity proposed by your first question must also include a thorough consideration of what the county may lawfully do. An agreement between the district and county must be supported by adequate consideration to support the county's expenditure of public funds to operate and maintain the ambulance. An arrangement which requires the county to devote a part of its ambulance service exclusively to the needs of one client raises questions about whether the county can ever receive a quid pro quo adequate to satisfy the rule against transfer of public funds without receiving corresponding public benefits. While we are in no position to structure a bargain for the parties, we suggest that the district and county consider the absolute legal necessity of an agreement that provides adequate assurances of a suitably equivalent exchange of public funds for public benefits by both parties.

You also ask about an apparent alternative method for meeting the health and safety needs of the district. You ask whether the

> Franklin County Water District, the Commissioners Court of Franklin County, and the Franklin County Hospital [can] enter into an agreement pursuant to the Interlocal Cooperation Act (Article 4413(32c), V.T.C.S.) pursuant to which Franklin County Water District would pay a sum of money to the

> Commissioners Court of Franklin County in exchange for which Franklin County Hospital would agree to place an ambulance and emergency medical technicians at Lake Cypress Springs, which is owned and operated by Franklin County Water District in Franklin County, during specified days of the year?

Our answer to this question is in the affirmative, and stands apart from our answer to the first question. As we noted above, the Parks and Wildlife Code permits the Franklin County Water District to operate and maintain recreation areas. The district may "execute agreements with other local, state, or federal agencies for planning, construction, maintenance and operation of public recreation areas." Parks and Wild. Code §13.04(4). Thus, it would be appropriate for the district to enter into a contract with Franklin County for the provision or services necessary to provide for healthy and safe recreation areas, so long as the county can lawfully be a party to such a contract.

The Interlocal Cooperation Act, article 4413(32c), V.T.C.S., also permits the kind of agreement contemplated in your question. See art. 4413(32c), §4(b). So long as all of the parties to an interlocal cooperation agreement are authorized to provide the services contracted for, such an agreement would be lawful.

We note that a county has the power both to provide for a hospital, see article 4478, V.T.C.S., and to appropriate and spend money from the general revenues of the county for health and sanitation. This power specifically includes the power to operate an ambulance service in the county. Attorney General Opinion C-772 (1966). Any expenditure of county funds must not be contrary to article III, section 52, of the constitution. See Attorney General Opinion JM-191 (1984). In other words, each party to the contract must receive adequate consideration for its expenditure.

## S U M M A R Y

The Franklin County Water District, a conservation and reclamation district created pursuant to article XVI, section 59, of the Texas Constitution, may provide funds to Franklin County for the purchase of an ambulance, if the ambulance will be used exclusively in furtherance of a lawful purpose of the district. Such lawful purposes are: protecting the health and safety of the district employees and providing for safe public recreation on the district's property. The district may enter into an agreement with Franklin

County and the county hospital to place an ambulance and emergency medical technicians on the district's property at certain times in order to protect the health of district employees and the general public using the district's property for recreation purposes. Parks and Wild. Code art. 13.03(4); V.T.C.S. art. 4413(32c).

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Don Bustion
Assistant Attorney General