

# THE ATTORNEY GENERAL
## OF TEXAS

JIM MATTOX
ATTORNEY GENERAL

February 12, 1990

Honorable Hugh Parmer
Chairman
Committee on Inter-
    governmental Relations
Texas State Senate
P. O. Box 12068
Austin, Texas  78711

Opinion No.  JM-1142

Re:  Types of retirement plans that appraisal districts may offer their employees (RQ-1778)

Dear Senator Parmer:

We understand you to ask essentially two questions. First, you ask us to specify the types of retirement plans that an appraisal district may offer its employees. Second, you wish to know what will be the income tax consequences to individual appraisal district employees and the proper method of disbursing funds held in any retirement plans in the event that any plans already in place were entered into improperly.

Your opinion request is prompted by the issuance of Attorney General Opinion JM-1068 (1989), which concluded that appraisal districts were without authority to enter into certain contracts providing retirement plans for appraisal district employees. We construed the question submitted in that request to ask whether an appraisal district had the authority to create a local retirement system, authority similar to that conferred on incorporated cities and towns by V.T.C.S. article 6243k and on counties by V.T.C.S. article 6228j. Because no statute confers explicit authority on appraisal districts or, for that matter, on any other sort of special district to create such a local system, we concluded that no such authority existed.[1] The opinion apparently has been misconstrued to

---

1. This opinion should not be construed to call into question the legitimacy of a plan authorized by special law creating a special district.

hold that subsections (b), (c), and (d) of section 67 of article XVI of the Texas Constitution sets forth the exclusive list of the retirement plans that political subdivisions may provide for their employees. However, we did not so hold; rather, we held that there was no statutory authority to create the sort of system about which we understood the requestor to inquire.

We will answer your first question in three parts. We will discuss first the legislative history and proper construction of section 67 of article XVI of the Texas Constitution. Then we will specify those retirement plans or systems in which appraisal districts are authorized by Texas statute to participate. Then we will discuss whether appraisal districts have implied authority to create local systems, authority analogous to that explicitly conferred by V.T.C.S. articles 6243k and 6228j on incorporated cities and counties, respectively.

I

Section 67 of article XVI of the Texas Constitution provides in pertinent part:

> (a) General Provisions. (1) The legislature may enact general laws establishing systems and programs of retirement and related disability and death benefits for public employees and officers. Financing of benefits must be based on sound actuarial principles. The assets of a system are held in trust for the benefit of members and may not be diverted.
>
> . . . .
>
> (4) General laws establishing retirement systems and optional retirement programs for public employees and officers in effect at the time of the adoption of this section remain in effect, subject to the general powers of the legislature established in this subsection.
>
> [(b) State Retirement Systems.]
>
> . . . .

> (c) Local Retirement Systems. (1) The legislature shall provide by law for:
>
> (A) the creation by any city or county of a system of benefits for its officers and employees;
>
> (B) a statewide system of benefits for the officers and employees of counties or other political subdivisions of the state in which counties or other political subdivisions may voluntarily participate; and
>
> (C) a statewide system of benefits for officers and employees of cities in which cities may voluntarily participate.
>
> . . . .
>
> (e) Anticipatory Legislation. Legislation enacted in anticipation of this amendment is not void because it is anticipatory. (Emphasis added.)

Section 67 was enacted at the same time that several other sections of the constitution were repealed. Acts 1975, S.J.R. 3.[2] The Bill Analysis prepared for S.J.R. No. 3 stated:

---

2. Section 48a of article III, adopted in 1936, and granted the legislature the authority to establish a retirement fund for employees of public schools, colleges, and universities. S.J.R. 18, Acts 1935, 44th Leg., at 1219. Section 48b of article III, adopted in 1965, created in the constitution the Teachers Retirement System. S.J.R. 27, Acts 1965, 59th Leg., at 2201.

Section 51e of article III, adopted in 1943, permitted incorporated cities and towns to create municipal retirement systems and disability pensions. H.J.R. 8, Acts 1943, 48th Leg., § 1, at 1142. Section 51f of article III, also adopted in 1943, permitted the legislature to provide for a statewide system of retirement and disability benefits for municipal officers and employees. H.J.R. 8, Acts 1943, 48th

(Footnote Continued)

> The proposed amendment is similar to the proposal which was overwhelmingly approved during the 1974 Constitutional Convention. The proposal combines the various detailed provisions in the present constitution into a more concise provision, eliminates rigidities which required constitutional amendments each time the Legislature sought to improve retirement benefits, and strengthens protections for members of existing systems.

The amendment enacting section 67 accomplished two broad objectives. First, subsection (a) of section 67 was a grant of authority, conferring very flexible power on the legislature to establish retirement and disability systems. The "Section-by-Section Analysis" in the Bill Analysis of Senate Joint Resolution No. 3 describes subsection (a), in relevant part, in the following way:

> Subsection (a)(1) authorizes the Legislature to establish systems and programs of retirement and related disability and death benefits for public employees. This grant of power is more flexible than present provisions which authorize specific systems in very narrow terms and gives constitutional status to whatever systems or programs the

(Footnote Continued)
Leg., § 1, at 1142.

Section 62 of article XVI, adopted in 1946, authorized the legislature to create a system of retirement, disability, and death benefits for state officers and employees. It also authorized each county to create such a system for its officers and employees with the approval of a majority of voters of the county. H.J.R. 10, Acts 1945, 49th Leg., at 1045.

And finally, section 63 of article XVI, adopted in 1953, provided that qualified members of the Teacher Retirement System were entitled to service credit for time earned while they were working for the state and, similarly, that qualified members of the state Employees Retirement System were entitled to credit for time earned while they were teachers. S.J.R. 6, Acts 1953, 53rd Leg., at 1169.

> **Legislature may create** subject to the following general requirements:
>
> (a) benefits must be based on sound actuarial principles -- a new requirement which places a new level of fiscal and fiduciary responsibility on the Legislature and the administrative bodies which manage the systems.
>
> (b) funds or assets of the systems are to be held in trust for the members of the systems and cannot be diverted for any purpose other than the benefit of the members -- a new requirement which protects the funds from being used for non-retirement purposes. (Emphasis added.)

Bill Analysis, S.J.R. 3, 64th Leg. (1975).

The legislature has created a variety of retirement and disability plans for public employees that subsection (a)(1) would sanction. See, e.g., V.T.C.S. arts. 6243a-1, 6343b, 6243d-1, 6243e, 6243e.1, 6243e.2, 6243e.3, 6243e-2, 6243e-3, 6243f, 6243f-1, 6243g, 6243g-1, 6243g-3, 6243j (setting forth provisions permitting the creation of various retirement programs for firemen, policemen, and municipal employees under certain circumstances).[3] The legislature also has enacted several statutes permitting political subdivisions to establish various retirement or deferred

---

3. Several of the above-listed statutes were enacted prior to the adoption of section 67 of article XVI; indeed, several were enacted prior to the adoption of the constitutional amendments that section 67 was intended to replace. Subsection (a)(4) of section 67 provides the following:

> **General laws** establishing retirement systems and optional retirement programs for public employees and officers in effect <u>at the time of the adoption of this section</u> remain in effect, subject to the general powers of the legislature established in this subsection. (Emphasis added.)

compensation plans that receive favorable tax treatment under the Internal Revenue Code. These statutes will be discussed in Part II of this opinion.

In addition to the conferral of flexible authority set forth in subsection (a) of section 67, subsections (b), (c), and (d) direct the legislature to establish or retain certain retirement systems.[4] Subsection (c), the subsection with which you are concerned, directs the legislature to provide for the creation of local systems by any city or county and to create two statewide systems, one for county and district employees and one for municipal employees, in which participation is voluntary.

The "Section-by-Section Analysis" of the bill analysis describing subsection (c) contains the following:

> Paragraphs (1), (2), and (3) of subsection (c) require the Legislature to provide for (a) the creation of separate local systems by cities and counties, (b) a statewide system of benefits in which counties or other political subdivisions can participate on a voluntary basis, and (c) a statewide municipal system in which towns and cities can participate on a voluntary basis. The present prohibition against legislative appropriations for local retirement systems has been deleted. The requirement that the creation of separate local systems by cities and counties must be approved by the voters thereof has also been deleted. Since this subsection deletes direct grants of authority enabling municipalities and counties to establish their own pension and retirement plans, the Legislature may need to enact enabling legislation to replace Article III,

---

4. Subsection (b) of section 67, intended essentially to replace sections 48a and 48b of article III and sections 62 and 63 of article XVI, directs the legislature to create state retirement and disability systems for teachers, state officers, and employees. Subsection (d) of section 67 directs that the legislature retain the system already in place for the state's judiciary.

> *Section 51e, and Article XVI, Section 62(b),*
> *of the present constitution.* Other details
> that have been deleted exist in present
> statutes. (Emphasis added.)

Bill Analysis, S.J.R. 3, 64th Leg. (1975).

Pursuant to subsection (c)(1), the legislature enacted V.T.C.S. articles 6243k and 6228j, which conferred on incorporated cities and counties, respectively, the authority to create local systems.[5] Pursuant to subsection (c)(2), the legislature enacted what is now codified as subtitle F of title 8 of the Government Code, creating the statewide Texas County and District Retirement System in which counties and special districts may voluntarily participate. And pursuant to subsection (c)(3), the legislature enacted what is now codified as subtitle G of title 8 of the Government Code, creating a statewide Texas Municipal Retirement System in which incorporated cities voluntarily may participate.

Thus, while section 67 of article XVI does direct the legislature to establish certain retirement and disability systems, it also grants broad authority to the legislature

---

5. Articles 6228j and 6243k, V.T.C.S., were enacted in 1975. Acts 1975, 64th Leg., ch. 426, at 1127. Sections 3 and 4 of that bill provided:

> Sec. 3. Retirement, disability, and death benefit systems or programs created under the authority of Article III, Section 51-e, or Article XVI, Section 62, Subsection (b), of the Texas Constitution, or under the general powers of home-rule cities, remain in effect, subject to power granted by law to alter or abolish the systems.

> Sec. 4. This Act takes effect on adoption by the qualified voters of this state of S.J.R. No. 3, 64th Legislature, Regular Session.

The amendment enacting section 67 was adopted at an election held on April 22, 1975.

to establish other retirement and disability systems for public employees. It does not set forth any exclusive list of the the retirement and disability systems that could be established for public employees and Attorney General Opinion JM-1068 did not so hold. We now turn to those pension plans or retirement systems in which appraisal districts are authorized by Texas statute to participate.

II

The legislature by statute has created or authorized the creation of several pension plans or retirement systems in which appraisal districts may choose to participate. Article 695g, V.T.C.S., authorizes political subdivisions, including appraisal districts, to participate in the federal Social Security program. Attorney General Opinions S-152 (1955); S-19 (1953); V-1198 (1951). And, as was pointed out in Attorney General Opinion JM-1068, appraisal districts are authorized to participate in the statewide County and District Retirement System. Gov't Code § 842.001.

Additionally, the legislature has authorized political subdivisions, including appraisal districts, to establish programs that receive favorable tax treatment as "deferred compensation" plans for purposes of subchapter D of chapter 1 of the Internal Revenue Code.[6] Article 6252-3e, V.T.C.S.,[7] enacted in 1989, permits political subdivisions in the state, including appraisal districts, to create deferred compensation plans that meet the criteria of section 401(k) of the Internal Revenue Code. And article 6252-3f, V.T.C.S., also enacted in 1989, permits political subdivisions in this state, including appraisal districts, to create deferred compensation plans that meet the criteria of section 457 of the Internal Revenue Code.[8]

---

6. For purposes of the Internal Revenue Code, pension plans, profit-sharing plans, stock bonus plans, as well as deferred compensation plans under state law, are considered "deferred compensation" plans.

7. We note that two different statutes have been designated "article 6252-3e."

8. We note that both V.T.C.S. articles 6252-3e and
(Footnote Continued)

There is no statute, however, that confers on appraisal districts the authority to create local pension systems that is analogous to the authority conferred on incorporated cities and towns by V.T.C.S. article 6243k[9] and on counties

_____

(Footnote Continued)
6252-3f are repealed, effective September 1, 1990, to be replaced by V.T.C.S. article 6252-3g. With the enactment of these statutes, V.T.C.S. article 6252-3b, which was enacted in 1972 and which permitted any political subdivision to create a deferred compensation plan for its employees and authorized the purchase of insurance and annuity contracts and mutual fund contracts, was repealed. Acts 1989, 71st Leg., ch. 147, § 4, at 522.

9. Article 6243k, V.T.C.S., provides the following:

> An incorporated city or town may create a retirement, disability, and death benefit system for its appointive officers and employees if a majority of the qualified voters of the city or town voting on the proposition approve the creation at an election called for that purpose. Each member of the system shall contribute to the system an amount determined by the city or town, which may not exceed 10 percent of the member's annual compensation paid by the city or town, and the city or town shall contribute for each member an amount that at least equals but is not more than twice the amount of the member's contribution. A member of a municipal system is eligible for disability benefits if he is disabled in the course of his employment with the city or town. A member is eligible for retirement benefits if he is 65 years old or older, or he is 60 years old but less than 65 years old and has
>
> (Footnote Continued)

by V.T.C.S. article 6228j[10], which were enacted pursuant to subsection (c)(1) of section 67 of article XVI of the Texas Constitution. It is argued, however, that appraisal districts have the _implied_ authority to create such local systems. It is to these arguments that we now turn.

### III

While home-rule cities are held to have the full power of self-government, counties and special districts are not. In other words, home-rule cities have full authority to do anything that the legislature could authorize them to do; accordingly, home-rule cities look to the acts of the legislature, not for grants of power, but only for limitations on their powers. Tex. Const. art. XI, § 5; Local Gov't Code ch. 51; State ex rel. Rose v. City of La

---

(Footnote Continued)
   been employed by the city or town for 25 years or more.

10. Article 6228j, V.T.C.S., provides the following:

   (a) A county may create a retirement, disability, and death benefit system for its appointive officers and employees if a majority of the qualified voters of the county voting on the proposition approve the creation at an election called for that purpose and advertised in at least one newspaper of general circulation in the county once a week for four consecutive weeks before the election is held. Each member of a system shall contribute to the system an amount determined by the county, but not more than five percent of the member's annual compensation paid by the county. The county shall contribute for each member an equal amount.

   (b) The assets of a county system, after a sufficient portion is set aside each year to pay benefits as they accrue, shall be invested in bonds issued or guaranteed by the United States, this state, or counties or cities of this state.

Porte, 386 S.W.2d 782 (Tex. 1965); Jones v. Int'l Ass'n Firefighters Local Union No. 936, 601 S.W.2d 454 (Tex. Civ. App. - Corpus Christi 1980, writ ref'd n.r.e.).

Counties and special districts, on the other hand, look to the legislature for grants of power. A county or a special district exercises only such powers as have been expressly delegated to it by the constitution or the legislature or which exist by clear and unquestioned implication. See, Canales v. Laughlin, 214 S.W.2d 451 (Tex. 1948); Tri-City Fresh Water Supply Dist. No. 2 of Harris County v. Mann, 142 S.W.2d 945 (Tex. 1940); Franklin County Water Dist. v. Majors, 476 S.W.2d 371 (Tex. Civ. App. - Texarkana 1972, writ ref'd n.r.e.) (a special district can do only that which is authorized by the statute creating it).

Nevertheless, several arguments have been adduced in support of the proposition that, in addition to or instead of those retirement and disability plans discussed in Part II of this opinion, appraisal districts have the "implied" authority to create local retirement and disability systems. We find none of the arguments persuasive.

The first such argument is that because appraisal districts have the authority to "compensate" their employees pursuant to section 6.05(d) of the Tax Code and because retirement and disability plans constitute a part of "compensation,"[11] they have implied authority to establish

---

11. In Byrd v. City of Dallas, 6 S.W.2d 738 (Tex. 1928), the Texas Supreme Court upheld the constitutionality of a statute authorizing pensions for city police and fire department personnel. Those challenging the statute argued that the granting of pensions to persons who were no longer employed by a political subdivision violated the state constitutional prohibition against granting public funds for private purposes. The court disagreed, holding that such a benefit constituted part of the compensation for which employees contracted.

This case stands for the proposition that a statute permitting the creation of a pension system does not violate the constitutional prohibition against granting public
(Footnote Continued)

local retirement and disability systems, apparently without restriction. Indeed, it is argued, in the words of one brief submitted in connection with this request, that appraisal districts have authority to create plans "as they see fit." We disagree for several reasons.

First, statutes are not to be construed in such a way as to impute to the legislature a foolish, useless, or vain thing. State ex rel. Childress v. School Trustees of Shelby County, 239 S.W.2d 777 (Tex. 1951); Doyalina v. Albert, 409 S.W.2d 616 (Tex. Civ. App. - Amarillo 1966, writ ref'd n.r.e.). The governing bodies of counties, cities (both home-rule and general law), school districts, and special districts are empowered, either by the constitution or by statute, to "compensate" employees. If a conferral of explicit authority to the governing body of a political subdivision to "compensate" public employees necessarily entailed the implied authority to offer those employees any retirement plan that the governing body saw fit, then the legislature's enactments of the statutes set forth in Part I of this opinion were useless, superfluous acts. Indeed, the legislature's adoption of all of those statutes set forth originally as title 109 of the Revised Civil Statutes of Texas, recodified in 1981 as title 110B and finally recodified in 1989 as title 8 of the Government Code, statutes dating back to 1909 and through 1989, would have been superfluous. While some persons may have assumed that political subdivisions have the implied authority to offer to their employees any retirement plan that they so choose, legislatures going back to almost the turn of the century evidently have not.

Second, the argument that appraisal districts have the implied authority to offer their employees any retirement plan that they so choose would produce an absurd result. It would mean that, while counties, cities, and school districts are governed by and limited to those statutes that the legislature has enacted over the years regarding retirement plans, appraisal districts have unrestricted power to do whatever they want. Moreover, it would also

---

(Footnote Continued)
funds; it does not stand for the proposition that a political subdivision has the implied authority to create a local pension system.

mean that those safeguards and protections designed to vouchsafe the interests of participating employees and those limitations upon investments set forth both in section 67 of article XVI and in the statutes that authorize the creation of various pension plans or retirement systems would not be applicable, since those provisions govern plans and systems enacted by general law. See, e.g., Attorney General Opinions MW-570, MW-506 (1982); MW-152 (1980) (opinions construing statutory limitations on investments designed to afford protection to participants). Nor is it at all certain whether retirement plans created absent explicit statutory authority would be protected under the Texas Trust Act, which governs the administration of private trusts. See Creps v. Board of Firemen's Relief & Retirement Fund Trustees of Amarillo, 456 S.W.2d 434 (Tex. Civ. App. - Amarillo 1970, writ ref'd n.r.e.). We know of no reason why the legislature would intend such a result.[12]

And third, interpretation by implication is permissible only when it is necessary; the argument that a special district has implied authority to do a thing is inapposite in an instance in which it is given specific authority to do a thing. See e.g., Creager v. Hidalgo County Water Improvement Dist. No. 4, 283 S.W. 151 (Tex. Comm'n App. 1926, judgm't adopted); Nalle v. City of Austin, 22 S.W. 668 (Tex. 1893). Indeed, invoking a common rule of statutory construction, it could well be argued that those statutory plans or systems enacted by the legislature should be read to exclude any others. See Weaver v. Robison, 268 S.W. 133 (Tex. 1924); Foster v. City of Waco, 255 S.W. 1104 (Tex. 1923); Attorney General Opinion H-604 (1975) (holding that the method set forth in V.T.C.S. article 6228g, which created the County and District Retirement System and detailed the way in which a political subdivision could contribute to the system, was exclusive). As we pointed out in Part II of this opinion, special districts, including appraisal districts, that are not authorized explicitly to create a local retirement system may choose to do one or more of the

---

12. For this same reason we reject the argument that all political subdivisions have the implied authority to create whatever pension plan or retirement system that they so choose and that all of the constitutional amendments and statutes enacted by the legislature are merely limitations on that implied authority.

following: participate in the federal Social Security system, participate in, the state-wide County and District Retirement System, or adopt one of the deferred compensation plans authorized by statute. We need not strain to find an implied power when the legislature has conferred specific, though limited, powers.

It is also argued that Attorney General Opinions M-836 (1971) and WW-215 (1957) and Lower Colorado River Auth. v. Chemical Bank & Trust Co., 185 S.W.2d 461 (Tex. Civ. App. - Austin 1945), aff'd 190 S.W.2d 48 (Tex. 1945) [hereinafter LCRA] support the argument that appraisal districts have implied authority to create a local pension plan. We think that reliance on these authorities is misplaced.

Attorney General Opinion M-836 concluded that the Sabine River Authority had the implied power to enter into a deferred compensation and pension plan based upon its explicit authority to employ and fix the compensation for those executives and employees as is necessary to carry out the functions and duties of the authority. That opinion relied upon Friedman v. American Sur. Co. of New York, 151 S.W.2d 570 (Tex. 1941), on remand 154 S.W.2d 659 (Tex. Civ. App. - Fort Worth 1941, no writ) [hereinafter Friedman], Byrd v. City of Dallas. 6 S.W. 2d 738 (Tex. 1928) [hereinafter Byrd], and Attorney General Opinion WW-215. The latter opinion also relied upon Friedman in support of the proposition that the Port Isabel-San Benito Navigation District had the implied power to provide certain benefits, including pension benefits, to its employees.

For three reasons, we do not think that the two court opinions are controlling. First, both Friedman and Byrd concerned whether specific statutes enacted by the legislature, one authorizing the creation of pensions for city police and firemen and the other creating a Texas Employment Compensation Fund, violated specific provisions of the Texas Constitution. In both cases, the Texas Supreme Court upheld the challenged statutes, concluding that the benefits that each provided should be considered a part of the compensation that employees earned, rather than a gratuity conferred. Neither case stands for the proposition that a political subdivision has any implied power.

Second, the holdings of these two opinions cannot be reconciled with other attorney general opinions, issued both prior and subsequent to the issuance to these opinions, that

do not find any implied authority to create or participate in retirement systems, absent explicit statutory authority. See, e.g., Attorney General Opinions H-903 (1976); H-604 (1975); C-581 (1966); WW-283 (1957). Nor can they be reconciled with those opinions that strictly construe authority conferred and find no implied power to provide benefits generally, absent explicit statutory authority. See e.g., Attorney General Opinions JM-887 (1988); JM-543 (1986); JM-406 (1985); JM-143 (1984); MW-592 (1982); H-535 (1975); WW-1373 (1962).

Third, the holdings of these two opinions cannot be reconciled with the strict construction evidently given section 62 of article XVI. When it was adopted in 1946, subsection (b) of section 62 provided in relevant part .that "[E]ach county shall have the right to provide for and administer a Retirement, Disability and Death Compensation Fund for the appointive officers and employees of the county . . . ." The subsection made the creation of such a fund contingent upon the approval of a majority of the qualified voters of the a county.

In 1958 the voters rejected an amendment to section 62 of article XVI of the Texas Constitution that would have expanded the scope of the section to include officers and employees of precincts. S.J.R. 6, Acts 1957, 55 Leg., at 1631. Even more significantly, in 1962 the voters of Texas defeated an amendment to subsection (b) to expand its scope to include "[e]ach county and any other political subdivision of this State." H.J.R. 36, Acts 1961, 57th Leg., at 1314 (emphasis added). Subsection (c) of section 62 was added in 1966, which authorized the legislature to provide a pension plan "for all the officers and employees of a county or other political subdivision of the State." S.J.R. 4, Acts 1965, 59th Leg., at 2190. It was only after this amendment was adopted and pursuant to this authorization that the legislature created in 1967 the statewide County and District Retirement System. Acts 1967, 60th Leg., ch. 127, at 240 (codified originally at V.T.C.S. article 6228g and now codified at subtitle F of title 8 of the Government Code). Clearly, neither the legislature that proposed the 1958 and 1962 amendments nor the voters that defeated them assumed that the implied power to create pension systems existed; if they had, the amendments would have been superfluous.

Both Attorney General Opinions M-836 and WW-215 contained faulty reasoning and relied upon authorities that

do not support  the proposition for  which they were  cited. Accordingly, Attorney General Opinions M-836 and WW-215  are hereby overruled.

In LCRA, the court  of civil appeals considered,  inter alia, whether the LCRA had the implied power to increase the compensation that it paid its officers and employees by four percent and then set aside the four percent in a  segregated fund for the  purpose of providing  a pension or  retirement plan for those officers and employees.  The court held  that it had the implied  power, based in  part upon its  explicit statutory power to compensate  employees.  For two  reasons, we conclude that LCRA does not control your question.

First, keeping in  mind that the  purpose of the  LCRA, which is in part to  provide electric power to consumers  in much the same way that an investor-owned utility does, it is significant that the court employed the following  rationale to support its conclusion:

> While  designated  and  classified  as  a governmental  agency  and  body  politic  and corporate,  the  Authority's  functions  and activities  partake  in  large  measure  the nature  and  characteristics,  within legislative  restrictions,  of  a  large industrial  enterprise,  rather  than  of  a strictly governmental  function.  It  has  no power  to  levy  taxes,  enact  laws  nor ordinances, as a city has; and its  efficient functioning depends in  large measure on  the sound judgment and  good business  management of its Board of  Directors.  They have  large control over the operation of its properties, and the income to be derived therefrom, which constitute the only source of revenue to meet its  obligations.  Of  necessity  matters relating  thereto  must  be  left  in  large measure to  their  judgment,  experience  and discretion; and  obviously  could  not  be prescribed in detail by law.
>
> . . . .
>
> Retirement  pay  from  funds  accumulated through the co-operative efforts of  employer and  employee  are  now  well-established business  practices  among  practically  all

> large industrial enterprises;  and are  being
> increasingly applied by  national, state  and
> municipal governments.  Typical instances are
> civil service  employees,  postal  employees,
> fire and police employees, etc.

185 S.W.2d at 467.

The court clearly felt that  the LCRA was not simply  a political  subdivision;  indeed,  the  Texas  Supreme  Court decision that affirmed  the LCRA  judgment of  the court  of appeals held for the first time that the LCRA was tax exempt from ad valorem taxes as a political subdivision.  Whatever else may be  said about  appraisal districts,  they are  not analogous to industrial enterprises.

We acknowledge  that  the public  policy  reasons  that impelled the court to conclude that the LCRA had an  implied power to create  pension systems  can apply  equally to  the creation of  pension systems  for  every sort  of  political subdivision:  namely that such plans may encourage employees to remain so employed,  with the result  that there is  less employee turn-over,  better service  to the  general  public and, ultimately less cost to the public.  But it needs to be remembered that, at the time  that LCRA was handed down,  no other sort of pension  system or plan  was available to  the employees of the  LCRA.  And  it should  also be  remembered that the court itself  admitted that, while pension  systems for  employees  had  become  "well-established  business practices  among  practically  all  large  industrial enterprises," it was only  "increasingly applied" to  public employees.  The force  of the rationale  that impelled  that court to create an implied power in 1945 is greatly weakened in 1990  in  the  face  of the  fact  that  the  legislature explicitly has made provision for the retirement benefits of special district employees.

Second, for  the reasons  set forth  in the  discussion above regarding  "compensation" and implied  power,  it  is obvious that the legislature has not assumed that,  whatever the LCRA  might  have  implied power  to  do,  all  special districts have identical implied  powers.  If such were  the case, again,  virtually all  of the  legislation enacted  in this area would  be unnecessary and  superfluous.  LCRA  may stand for  the proposition  that the  LCRA has  the implied power to  create  a  pension system  for  its  officers  and employees; it  does  not  stand  for  the  proposition  that special districts generally are so empowered.

Instructive in this regard is Attorney General Opinion V-569 (1948), in which the state auditor asked whether a list of 31 special districts were authorized to participate in the Employees Retirement System of Texas. All of the districts were created pursuant to section 59 of article XVI of the Texas Constitution. The opinion discusses the LCRA case and sets forth essentially the same quotation set forth above, describing the LCRA's functions and power, before concluding that its employees were not authorized to participate in the Employees Retirement System, based upon the statutory definitions of "employee" and "department" that govern participation in the retirement system. In spite of the fact that the LCRA had been held to be an agency of the state in Lower Colorado River Authority v. McCraw, 83 S.W.2d 629 (Tex. 1935), the opinion concluded that LCRA employees were not "employees of the State" for purposes of the retirement system. Reasoning by analogy, the opinion held that employees of conservation and reclamation districts were not "employees of the State" for purposes of the retirement system either. Curiously, the opinion referred to the "apparent" authority of the LCRA to create its own retirement system, but failed to state that conservation and reclamation districts possessed the same power:

> We note here that from reading Lower Colorado River Authority v. Chemical Bank and Trust Co., supra, the L.C.R.A. apparently has its own retirement system. In any event, the employees of this particular district would be precluded from membership in the system afforded by H. B. 168 [the Employees Retirement System of Texas], by reason of Section 1.C., of H. B. 168 which defines 'employee.'
>
> We are, therefore, of the opinion that the employees of the conservation and reclamation districts named in your request are not eligible for membership in the Employees Retirement System of Texas.

Id. at 7.

The reason for the apparent failure of the legislature specifically to provide for the inclusion of special districts in the statewide plan for counties until 1967 probably stems from the fact that the proliferation of

special districts in Texas is a comparatively recent phenomenon. As recently as February 1959, there were an estimated 524 special districts in Texas. Of these, 115 were authorized by local law and 409 were created under some 13 general laws governing water districts. See W. Thrombley, Special Districts and Authorities in Texas, Institute of Public Affairs, University of Texas at Austin (1959). By 1979 there were over 420 special districts in Harris County alone. We think it significant that in a treatise on public employee retirement in Texas written in 1955, no mention is made of any implied authority of special districts to create local pension systems, nor is mention made of the LCRA case. See Swanson & Miskell, Public Employment Retirement in Texas, Institute of Public Affairs, University of Texas at Austin (1955). Indeed, the only reference to any sort of retirement system for special districts in this 1955 treatise is the federal Social Security program. Id. at Table XIV, part III, at p. 91.

Three other arguments have been adduced, each relying upon misconstrued or misunderstood specific statutory provisions, in support of the "implied power" theory. The first maintains that the facts that participation in the County and District Retirement System is voluntary and that the System's board must approve any such participation by a special district, Gov't Code § 842.001(c), necessarily mean that special districts have the implied authority to create their own local pension systems.

This argument is faulty in two respects. One, it ignores the authority conferred by statute to create deferred compensation plans and to participate in the federal Social Security program. And two, it wrongly presupposes that a retirement plan has to be offered to employees in the first instance. In other words, it assumes that the only choice a special district has is either to participate in the County and District Retirement System or to create a local pension system analogous to those authorized by V.T.C.S. articles 6228j and 6243k.

In fact, neither federal nor state law requires a local political subdivision to create a pension plan. The federal Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq. ("ERISA") does not govern local political subdivisions. Attorney General Opinion H-618 (1975); 29 U.S.C. § 1003(b). And no provision in state law requires local political subdivisions, except independent school

districts, to make participation in a retirement program available to its employees; participation is voluntary.

For example, in Attorney General Opinion H-1122 (1978), this office held that a municipality that chooses to exempt itself from the operation of V.T.C.S. article 6243e, which governs retirement systems for volunteer fire departments, is not required to create an alternate retirement system. In Attorney General Opinion H-903 (1976), in answer to a question asking whether employees of a hospital whose administration had been taken over by the county were authorized to establish their own pension plan, this office held that employees became automatic members of County and District Retirement System if the county was already participating in the system or the county could elect to discontinue participation in the statewide system and create a local one pursuant to V.T.C.S. article 6228j. No other alternative was available. Thus, in an instance in which a special district is not authorized explicitly by statute to create a pension plan, it may only do one or more of the following: adopt a deferred compensation plan pursuant to statute, participate in the federal Social Security program, again by statute, or participate in the County and District System. Or it may offer nothing at all.

The next argument misconstruing specific statutory provisions asserts that the existence of what is now codified as section 842.006 in the Government Code amounts to a recognition by the legislature that special districts have the implied authority to create local pension systems. That section provides:

> A local pension system established for employees of a subdivision may merge into the [County and District] retirement system on conditions prescribed by the board of trustees [of the County and District Retirement System].

Section 842.006 is the amended version of what originally was denominated sections 10 and 11 in V.T.C.S. article 6228g.

Subsection (c) of section 62 article XVI, which created the County and District Retirement System, authorized the legislature to provide for a voluntary merger of subdivision (b) "local systems" into the state system. Pursuant to this authorization, section 10 of article 6228g, V.T.C.S., was

enacted to govern the merger of a local county system into the newly-created state-wide system. It provided in pertinent part:

> The voluntary merger into the System established by this Act (in this Section called the 'state system') of pension systems heretofore established under Subsection (b) of Section 62 of Article XVI of the Constitution of Texas (in this Section called the 'local system') is hereby authorized upon the terms and conditions stated in this section, and upon such additional terms and conditions as may be prescribed by the Board of Trustees of the state system, and after approval of the merger proposal by the governing body of the subdivision.

The only "local system" to which this section could apply is a local county system authorized by subsection (b) of section 62.

Section 11 of article 6228g, V.T.C.S., governed "other local systems" and provided in pertinent part:

> The voluntary merger into the state system created by this Act of pension systems heretofore or hereafter established for employees of subdivisions as hereinabove defined (exclusive of such systems as are included within the provisions of Section X, above)[13] is authorized to be effected upon

---

13. Subdivision 3 of section 2 of article 6228g, V.T.C.S., defined "subdivision" in the following way:

> The term 'subdivision' means and includes: the several counties of this State; all other political subdivisions of this State now existing or hereafter established, which consist of all of the geographical area of a county, or of all or parts of more than one county; the several political subdivisions of each county of this State which have the
>
> (Footnote Continued)

> terms and conditions to be prescribed by the
> Board of Trustees of this state system, and
> generally in accordance with the provisions
> of Section X, above, so far as applicable.

It is argued that the existence of this section
indicates legislative recognition that special districts
have the implied power to create local pension systems
because it is only to these systems that the section could
refer. We disagree. If, at the time that this section was
enacted, there were no other subdivisions that had explicit
statutory authority to create pension systems to which this
section could have applied, this argument might be more
compelling. Such, however, was not the case. See, e.g.,
V.T.C.S. arts. 4494i, 4494n (now recodified as chapter 281
of the Health & Safety Code); Board of Managers of the
Harris County Hosp. Dist. v. Pension Bd. of the Pension Sys.
for the City of Houston, 449 S.W.2d 33 (Tex. 1969); Attorney
General Opinion WW-904 (1960). The fact that the
legislature enacted section 11 of article 6228g is not
evidence of legislative recognition that special districts
that do not have the explicit statutory authority to create
local pension systems possess the implied authority to
create them.

The third argument misconstruing specific statutory
provisions asserts that the existence of section 802.001 of
title 8 of the Government Code indicates legislative
recognition that special districts have the implied
authority to create local pension systems. We disagree.

---

(Footnote Continued)

> power of taxation; and all counties and
> cities operating a city-county hospital under
> the provisions of Chapter 383, Acts of the
> 48th Legislature, Regular Session, 1943, as
> amended [V.T.C.S. art. 4494i, now recodified
> as Health & Safety Code §§ 265.011 - .016].
> The term also includes, for the purpose of
> providing similar coverage for its own
> employees, the Texas County and District
> Retirement System. But the term 'subdivi-
> sion' excludes all incorporated cities and
> towns, and all school districts and junior
> college districts established under the laws
> of this State.

Chapter 802 of title 8 of the Government Code sets forth certain administrative requirements governing public retirement systems, and provides that, with certain specified exceptions, all must register with the State Pension Review Board. Subdivision (2) of section 802.001 defines "public retirement system" for purposes of that chapter and provides:

'Public retirement system' means a continuing, organized program of service retirement, disability retirement, or death benefits for officers or employees of the state or a political subdivision, or of an agency or instrumentality of the state or a political subdivision, other than:

(A) a program providing only workers' compensation benefits;

(B) a program administered by the federal government;[14]

(C) an individual retirement account or individual retirement annuity within the meaning of Section 408, or a retirement bond within the meaning of Section 409, of the Internal Revenue Code of 1986 (26 U.S.C. Sections 408, 409);

(D) a plan described by Section 401(d) [sic] of the Internal Revenue Code of 1986 (26 U.S.C. Section 401);[15]

(E) an individual account plan consisting of an annuity contract described by Section 403(b) of the Internal Revenue Code of 1986 (26 U.S.C. Section 403);[16]

---

14. See V.T.C.S. art. 695g.

15. See V.T.C.S. art. 6252-3e, to be superseded by V.T.C.S. art. 6252-3g.

16. See V.T.C.S. art. 6252-5a.

(F) an eligible state deferred compensation plan described by Section 457(b) of the Internal Revenue Code of 1986 (26 U.S.C. Section 457);[17] or

(G)(i) in Sections 802.104 and 802.105 of this chapter, a program for which benefits are administered by a life insurance company; and

(ii) in the rest of this chapter, a program for which the only funding agency is a life insurance company.[18]

This section merely requires that all public retirement systems, other than those programs specifically listed above, must register with the State Pension Review Board. The list sets forth programs in which political subdivisions have been authorized to participate explicitly by statute or in which they arguably may be permitted to participate in the future. It is not a list of programs in which political subdivisions have implied authority to participate nor does it in any way constitute an affirmative conferral of authority to participate in such programs. Moreover, section 802.105, which requires that each public retirement system register with the board, provides that registrants must include "a citation of the law under which the system was created." Gov't Code § 802.105(b)(3) (emphasis added). Obviously, any system whose authority was merely implied could not comply with this provision. Thus it is evident that the legislature did not assume that such implied authority existed[19].

_____

17.  See V.T.C.S. art. 6252-3f, to be superseded by V.T.C.S. art. 6252-3g.

18.  See V.T.C.S. art. 6252-5a.

19.  It is suggested that the Internal Revenue Code itself confers authority on special districts to enter into plans approved by the IRS. We disagree. The form letter that the IRS sends special districts approving a plan specifically disclaims that it constitutes approval under local law:

(Footnote Continued)

The final argument adduced to support the claim that appraisal districts have the implied authority to create local pension systems does not misconstrue any statutory provisions. Instead, it misapplies a rule of statutory construction. It is urged that, because the staff of the State Property Tax Board, in its published newsletters and pamphlets, declared that appraisal districts were empowered to create local pension systems other than those whose creation is specifically authorized by statute, this administrative construction should be given great weight. We do not find this argument convincing.

It is an accepted principle of statutory construction that the construction placed upon a statute by the agency charged with its administration is entitled to great weight, Ex parte Roloff, 510 S.W.2d 913 (Tex. 1974); State v. Aransas Dock and Channel Co., 365 S.W.2d 220 (Tex. Civ. App. - San Antonio 1963, writ ref'd), especially where contemporaneous, or nearly so, with the statute itself, Burroughs v. Lyles, 181 S.W.2d 570 (Tex. 1944); Stanford v. Butler, 181 S.W.2d 269 (Tex. 1944). But in this instance, the application of this principle is undermined because the administrative construction made by the staff of the State Property Tax Board has not been consistent.

As early as 1983, the pamphlet published by the agency entitled "Appraisal Board Manual: A Handbook for Countywide Appraisal District Directors" provided specifically that appraisal districts could participate in either the County and District Retirement System or a private retirement plan. Id. at 19-20. But even earlier, in an issue of the agency's monthly newsletter "Statement," published in August 1980, the agency indicated that the only options available to appraisal districts were participation in the federal Social Security program, the County and District Retirement System, or both. Id. at 9.

Moreover, the application of this principle of construction has been invoked in instances in which an

---

(Footnote Continued)

This opinion relates only to the acceptability of the form of the plan under the Internal Revenue Code. It is not an opinion of the effect of other Federal or local statutes. (Emphasis added.)

administrative agency has construed an act that it is charged to administer. In this instance, the State Property Tax Board has no duties relative to any of the statutes governing the creation of pension systems or deferred compensation plans. Without regard to either the skill or knowledge of the staff of the State Property Tax Board, their administrative construction of these statutes is entitled to no greater weight than the administrative constructions of these same provisions by the staff of, for example, the Texas Water Commission or the Department of Public Safety.

We therefore conclude that appraisal districts have no implied authority, absent specific statutory authority, to create local pension systems. Accordingly, we conclude that appraisal districts may participate in the following: the federal Social Security program pursuant to article 695g, V.T.C.S., the County and District Retirement System pursuant to chapter 842 of the Government Code, and deferred compensation plans authorized by article 6252-3e and 6252-3f, V.T.C.S. (to be superseded by article 6252-3g, V.T.C.S., effective September 1, 1990). Appraisal districts have no implied authority to create local retirement systems analogous to those authorized by articles V.T.C.S. 6243k and 6228j, which incorporated cities and counties, respectively, may create. We turn finally to your second question.

IV

You wish to know what will be the income tax consequences to individual appraisal district employees and the proper method of disbursing funds held in any retirement plans in the event that any plans already in place were entered into improperly. The Texas Association of Appraisal Districts conducted a survey of its members that indicated that, among the 254 counties of the state, 124 appraisal districts offer "local retirement plans." If an appraisal district created a local plan that was not authorized by statute, the apparent varieties as to contracts entered into, benefits offered, system or plan administration, restrictions as to participation, years required for vesting, employee contributions, and appraisal district contributions are so great that an attempt would necessarily require us to answer hypothetical questions and engage in fact-finding, neither of which is permitted in the opinion process. Accordingly, we decline to answer your second question.

We are not unmindful of the possible consequences of our decision, but the consequences of legal interpretation do not control. Regarding a matter of constitutional interpretation, the Texas Supreme Court declared in <u>Koy v. Scheider</u>, 218 S.W. 479 (Tex. 1920):

> No matter how far-reaching and disastrous would be the consequences . . . we would not decline to make the declaration if such was believed to be the true intent of the language of the Constitution.

Quoted in <u>Director of the Dep't of Agric. and Env't v. Printing Indus. Ass'n, of Texas</u>, 600 S.W.2d 264 (Tex. 1980). See <u>Shepherd v. San Jacinto Junior College Dist.</u>, 363 S.W.2d 742 (Tex. 1962); <u>Cramer v. Sheppard</u>, 167 S.W.2d 147 (Tex. 1942). We are no less bound by this principle.

The situation with which we are here confronted is not altogether unprecedented. When the legislature was apprised of the fact that many appraisal districts in the state had entered into long-term lease agreements for the rental of office space or entered into contracts for the construction of buildings or the purchase of real property without the statutory authority to do so, it enacted section 6.051 of the Tax Code to so empower those appraisal districts. Acts 1987, 70th Leg., ch. 55, § 2, at 147. The remedy for the situation with which we are here confronted lies with the legislature.

We affirm the result of Attorney General Opinion JM-1068.

### S U M M A R Y

> Appraisal districts are authorized to participate in the federal Social Security program by article 695g, V.T.C.S., to participate in the County and District Retirement System by chapter 842 of the Government Code, and to create deferred compensation plans authorized by V.T.C.S. articles 6252-3e and 6252-3f. Appraisal districts have no implied authority to create local pension systems analogous to those systems that incorporated cities and counties may create pursuant to V.T.C.S. articles 6243k and 6228j respectively. Because an answer to the question as to the possible

income tax consequences to individual appraisal district employees of participating in a retirement system that is not authorized by statute would require us to both answer hypothetical questions and make findings of fact, we decline to answer your second question. We affirm the result of Attorney General Opinion JM-1068 (1989).

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jim Moellinger
Assistant Attorney General